Wheeler & Wilson Manuf'g Co. vs. Brown and others.

WHEELER & WILSON MANUFACTURING COMPANY, Respondent, vs. BROWN and others, Appellants.

*October 19, 1885 — February 2, 1886.*

*(1) Guaranty: Business to be done in certain territory. (2) Reversal of judgment: Principal liable, but sureties not.*

1. The defendant B. proposed to the plaintiff to sell its machines " in Menominee Range and Felch Mountain and vicinity, or in such other territory as you may allow me to sell in." The proposal was dated in Michigan (in which state are also the places named), and was accepted by the company. The other defendants guarantied the faithful performance of such contract by B. and the payment of all indebtedness which might arise thereunder from him to the company. After doing business for a time in the places named, B. removed, at the request of the company, to Oshkosh in this state and did business there for the company. At the time of such removal, and at the request of the company, he turned over to his brother all the business in Michigan, and did not thereafter do any business for the company in that state. The action is upon the contract and guaranty to recover an indebtedness alleged to be due from B. to the company on account of business done in Oshkosh. *Held,* that the guaranty covered the acts of B. *so long as he continued to do business for the company in the territory named* or its vicinity, whether such acts were done in that or in other additional territory, but that it did not extend to acts done in other territory after he had abandoned the territory named with the assent of the company.

2. The liability of the sureties for business done at Oshkosh under the original contract having been the only matter of contention in the trial court, and the question whether the principal had made a new contract with the plaintiff as to such business not having been fairly tried, the judgment against the defendants is reversed both as to principal and sureties, without prejudice to the right to bring a new action against the principal either upon the old or the new contract.

APPEAL from the Circuit Court for *Winnebago* County. The case is sufficiently stated in the opinion.

For the appellants there was a brief by *Crozier & Tyrrell,* and oral argument by *Mr. Tyrrell.*

For the respondent the cause was submitted on the brief of *Chas. W. Felker.*

The following opinion was filed November 3, 1885:

TAYLOR, J. The respondent brought this action to recover damages against the appellants for a breach of contract entered into by the company with the appellant *J. H. Brown,* as principal, bearing date April 22, 1882, and the other appellants as his sureties on said contract. The action was tried by a referee, who found in favor of the company. His report was affirmed by the court, and judgment was entered in favor of the respondent, against all the appellants.

The contract upon which the action was brought is an agency contract on the part of the appellant *J. H. Brown.* The parts of the contract which are material in determining the questions presented upon this appeal are the following:

"QUINNESEC, MICH., April 22, 1882.

"*The Wheeler & Wilson Manufacturing Co.*— GENTLEMEN: I will take your sewing-machines on consignment on the following terms: Machines to be sold in Menominee Range and Felch Mountain and vicinity, or in such other territory as you may allow me to sell in. Machines to be shipped from Chicago, Illinois; freight from there to be paid by me. I expect orders to be filled at your option."

Then follow provisions regulating the manner of doing the business, prices, etc. The fourth provision is as follows: "This contract may be determined at any time, and any stock on hand to be subject to your order."

This proposition was signed by *J. H. Brown,* and immediately below his signature is the following:

"DEAR SIR: Your contract or proposal is accepted.

"Yours respectfully,

"WHEELER & WILSON MFG. CO.

"By J. M. BEACH."

Then follows the guaranty signed by the other appellants as follows:

"For value received, and in consideration of this contract, we hereby guaranty to the *Wheeler & Wilson Manufacturing Company*, its successors and assigns, the full and faithful performance of the foregoing contract on the part of *J. H. Brown*, one of the parties thereto, and the payment by the said *J. H. Brown* of all indebtedness which may arise thereunder from the said *J. H. Brown* to the said company.

"Witness our hands and seals this 22d day of April, 1882."

[Signed and sealed by all the appellants.]

The evidence in the case establishes the following facts: (1) That the appellant did business, under the contract, in Michigan, at the places mentioned in said contract, until the 28th of November, 1882; (2) that all indebtedness of *J. H. Brown* to the company arising out of the business done in Michigan was fully paid and discharged long before this action was commenced; (3) that on or about the 28th of November, 1882, at the request of the company, *J. H. Brown* removed to Oshkosh, in this state, and from that date he did business for the company in said city and vicinity, and thereafter did no business for the company in Michigan at any of the places particularly specified in said contract, or at any other place in said state; (4) that when *J. H. Brown* removed his place of business from Michigan to the city of Oshkosh, at the request of said company he turned over his business in Michigan, and the machines then on hand there, to his brother, A. H. Brown, at Quinnesec; (5) that all indebtedness of *J. H. Brown* to the company, for which judgment in this action was rendered against the appellants, grew out of transactions of *J. H. Brown* with the company after his removal to the city of Oshkosh, and on account of machines and other property

delivered to him at that place after he had left Michigan and turned over the business there to his brother as requested by the company.

There was another question litigated in the case, upon which the evidence was conflicting, viz.: whether *J. H. Brown* made a new contract with the company on the 28th of November, 1882, differing materially from the one made April 22, 1882, and under which the business was done at Oshkosh. The referee and court found against the appellants upon that issue. In view of the construction we think should be put upon the contract of April 22, 1882, it becomes unnecessary to examine the evidence critically for the purpose of determining whether the finding of the referee and court upon that issue is or is not sustained by the evidence. We think, however, the evidence as to what did in fact take place between the company and *J. H. Brown* at the time he transferred his business from Michigan to the city of Oshkosh may be considered in giving construction to the contract of April 22, 1882, upon which the action is based.

The claim of the company is that the contract of April 22d covered the business done by *J. H. Brown* after the abandonment of the business in Michigan and his removal to Oshkosh, and that the sureties on that contract are liable to make the company good for any indebtedness of *Brown* to the company growing out of the Oshkosh business, as well as that growing out of the business done in Michigan. On the other hand, the sureties claim that when their principal, *J. H. Brown,* abandoned the business in Michigan at the request of the company, and, with its consent, turned over the business there to his brother and removed to Oshkosh and commenced a new business there, their liability upon the contract of April 22, 1882, ceased, and, as the evidence shows there was no indebtedness of *J. H. Brown* to the company on account of the business done under the

contract in Michigan, judgment should have been rendered in their favor.

After a careful consideration of the language of the contract and what was done under it by the principal *J. H. Brown*, and by the company through its agents, we are clearly of the opinion that the sureties are not liable to the company for any indebtedness arising out of the business done by *Brown* at Oshkosh.

The contract of April 22d fixes a locality to the business to be done by the agent *Brown*, viz.: "Menominee Range, Felch Mountain, and vicinity," in Michigan. Had there been no other words in the contract no one would contend that the contract contemplated that the agent should do business in the city of Oshkosh in this state. Certainly that city cannot be said to be in the vicinity of the places mentioned in the contract. It is claimed, however, that the additional words "or in such other territory as you may allow me to sell in" are general enough to cover all business which the company may permit the agent to transact for it at any place, either in or out of the state of Michigan; in fact, that they are so general that the sureties must be held for all business done by the agent for the company anywhere and everywhere, if done with the consent of the company. We cannot think this is a fair construction of the contract, or that it was so understood either by the company or the sureties of *Brown*. The sureties undoubtedly signed the guaranty because they had some knowledge of the business capacity of *Brown* and of the amount of business he would be likely to do in the places specified in the contract — that while he was doing business in these places and their vicinity, he would have his place of business in their neighborhood, where they would have an opportunity of knowing something as to its extent and profitableness; and it is highly improbable that they would have

become his sureties for a business to be transacted at a great distance and of which they could know nothing.

Whatever effect the words "or such other territory as you may allow me to sell in" might have so long as the agent continued to do business in the territory mentioned in the contract, we think they cease to have any effect when the agent, with the consent of the company, abandons that territory, and the company puts another agent in his place to do its business in such territory. The proper construction of the words mentioned, in the connection in which they are used, as applied to the sureties, is that they guaranty the acts of the agent so long as he continues to do business as the agent of the company in the territory named, or in its vicinity, or other territory in which the agent may do business during the time he continues to do business in the territory particularly named in the contract; and that it would be altogether too liberal a construction of the contract to hold the sureties liable upon their guaranty, though no business had ever been done by the agent in the territory named, or after he ceased to do business in such territory and another agent of the company was placed in such territory.

If the construction contended for by the learned counsel for the company is the true construction of the guaranty, then the sureties would have been liable had the company at once, after the contract was signed, sent the agent to New York, New Orleans, San Francisco, or even London or Paris, to do business for them. Such a result cannot fairly be said to have been contemplated by the parties when the appellants signed the guaranty. We think that under no circumstances can the sureties be held after the agent has abandoned business in the territory particularly described in the contract, especially when such abandonment is with the consent and approval of the company.

We think the construction we have given to the contract is the one given to it by those who represented the company when the change to Oshkosh was contemplated. J. M. Beach, the general agent of the company, testifies as follows: *Question.* "State whether you ever authorized Hall to come to Oshkosh to make a contract with *Brown* for Oshkosh and vicinity?" *Answer.* "Yes, sir; I sent him here to fix up *and get security on a contract and get one signed by Brown.*" Hall, the man referred to in the testimony of Beach, says: "We had no idea of letting *Brown* come here [meaning Oshkosh] under the old contract at that time. I met *Brown* in Oshkosh about November 27, 1882. I talked with him about fixing up a new contract, and he told me he thought he could get securities in Waupun. I filled out a blank, and we started for Waupun on the 28th. We visited several parties, and they refused, and we then returned to Oshkosh that night, arriving on the morning of the 30th, I think." It is true, this witness adds that he told *Brown*, on their return from their ineffectual search for sureties, "that he might come down to Oshkosh on the old contract." This, however, is denied by *Brown;* and Hall does not testify that he had authority from the company to make the statement he did as to the old contract, and Beach says, as above quoted, that Hall was sent up to get security on a contract, not to arrange for *Brown* to come to Oshkosh on the old contract.

This action on the part of those who represent the company is almost conclusive evidence that they did not understand that the sureties upon the original contract would remain liable to the company after *Brown's* surrender of that territory to another agent and taking an agency in an entirely different and distant locality. It may be pertinently asked why the company desired *Brown* to enter into a new contract and give new sureties for the business to be done at Oshkosh, if the company already had a contract

with him, with sureties, to secure them for the faithful performance of his agency in the new field of labor. The apparent and logical interpretation of the acts of the company is that the company did not then construe the Michigan contract as covering the business to be thereafter transacted at Oshkosh in this state.

It is unnecessary to cite authorities showing that " sureties are favorites of the law, and have a right to stand upon the strict terms of their obligation when ascertained. Beyond burdens thus taken upon themselves they are not bound." See *Kimball v. Baker*, 62 Wis. 526, 529, and cases cited in the opinion.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment in favor of the appellants, but without prejudice to the right of the respondent to bring an action against the appellant *J. H. Brown* for the claim set out in the complaint in this action.

The following opinion was filed February 2, 1886:

TAYLOR, J.   A motion for a rehearing is made by the respondent in this case upon two grounds:

*First.*   It is said this court admits the liability of the appellant *Brown* on the contract set out in the complaint, and consequently that under the statute judgment was properly entered against him, although as to the other defendants no cause of action was proved; and that the judgment should therefore have been affirmed as to him.   See sec. 2885, R. S.; sec. 3071, R. S.

We think the learned counsel is mistaken as to the ruling of this court upon the appeal.   We held that the sureties were not liable upon the contract signed by them for the business done by their principal in Oshkosh, and, as that was the only contention in the circuit court, it was unnecessary to determine whether the principal, *Brown*, was liable

upon that contract for the business done there. It was claimed by him that the business he did there was under a new and different contract; and, as we were of the opinion that as to him that question had not been fully tried in the circuit court, we reversed the judgment as to all the defendants, leaving the plaintiff to commence a new action to recover of him for the business done in Oshkosh, either upon the new or old contract, if it saw fit to do so. We inserted the qualification in the judgment of reversal, so that the judgment in this case might not be set up as a bar to such new action.

*Second.* It is insisted we ought to rehear the case upon the main question. Notwithstanding the criticism made by the learned counsel upon the decision of this court upon the main question in the case, we are clearly of the opinion that the decision is correct.

The case of the *Howe Sewing-Machine Co. v. Layman,* 88 Ill. 39, cited by the learned counsel, is certainly not in conflict with our opinion, so far as can be ascertained from the report of the case. In the opinion in that case the court say: " The bond provides that it shall be binding if the *business of the canvassers or their location should be changed by the company,* notwithstanding they only agreed to work at Virden or in its vicinity; hence when the change was made they were bound to accept the change and could not have refused, and they do not seem to have interposed any objection; therefore the bond remained binding on all the obligors for previous as well as for the future acts of Layman & Duncan."

If this reference by the court to the conditions of the bond in that case is a true statement of its conditions, then it was an entirely different one from that upon which the action in this case is founded. Certainly there is no express condition in the bond in this case that the canvasser, *Brown,* should do business for them in any place or places

Doud and others vs. Wisconsin, Pittsville & Superior R. Co. and others.

other than those mentioned in the bond; and we still think, upon a fair and just construction of its provisions, there is no such implied condition. As there was no provision in the contract requiring *Brown* to do business in any other place than the place mentioned in the bond, his voluntary consent do business in another place could not bind his sureties.

We see no reason for a rehearing in this case.

*By the Court.*— Motion for rehearing denied, with $25 costs.

65  108
76  160
65  108
78  319

65  108
88   78
83  269

65  108
96  227

65  108
98  309

65  108
100  256

65  108
105  361

65  108
109  371

65  108
112  ¹612

65  108
113  ²525

65  108
115  ¹379