THE SINGER MANUFACTURING COMPANY v. C. F. ARMSTRONG.

No. 314.

1. SURETYSHIP — *Construction of Bond — Discharge of Surety.* Armstrong, as surety for DeBray, signed a bond to the plaintiff in error, reciting that plaintiff in error was a New Jersey corporation doing business in the state of Kansas, and that it had employed DeBray as its agent for the transaction of such business as it might entrust to him, and conditioned that he would faithfully perform his duties, account for, pay over and deliver all moneys, credits, notes, leases and other property belonging to it that might be entrusted to him or come into his possession or control by virtue of that employment, whether under or in the absence of any present or future contract, agreement, or understanding, verbal or written, or any change thereafter therein, with or without notice to the obligors, and repay to it all expenses which it might incur in ascertaining the nature and extent of any default in such conditions. The plaintiff in error, without the knowledge of Armstrong, terminated this employment in Kansas, removed DeBray to Missouri, where he was reemployed under a new contract, and after a lapse of some years returned him to Kansas, employing him at the city of Lawrence therein. *Held*, That the termination of the contract of employment at Concordia, in the state of Kansas, and the removal of DeBray to the state of Missouri, discharged Armstrong from any obligation upon the bond on account of defaults occurring thereafter.

2. ——— *Provision for Attorney Fee, Void.* A provision in such a bond for the payment of attorney's fees violates the provisions of section 3896, General Statutes of 1889, and cannot be enforced.

Error from Cloud district court; F. W. STURGES, judge.    Opinion filed July 11, 1898.    Affirmed.

*Caldwell, Wilmoth & Ackley,* for plaintiff in error.

*C. W. Van De Mark,* for defendant in error.

The opinion of the court was delivered by

MAHAN, P. J.: The plaintiff in its petition against the defendant Armstrong alleges that on the 17th day

of October, 1892, it was a corporation organized under the laws of New Jersey and doing business in the state of Kansas, and on that day Armstrong, as surety for one DeBray, as principal, made and delivered to it a certain bond of that date in the sum of $500 and ten per cent. attorney's fees. The condition of this bond, which is declared to be a continuing guaranty, first recites that plaintiff is a New Jersey corporation doing business in the state of Kansas, and next the employment of DeBray as the agent of plaintiff for the transaction of such business as it might entrust to him; that he should well and faithfully perform his duties as such, and account for, pay over and deliver to the company all moneys, credits, notes, leases, accounts, books, property and effects of any and every kind and nature whatsoever, belonging to them, that might be entrusted to him or might come into his possession or under his control by virtue of his said employment, or otherwise, and whether under or in the absence of any present or future contract, agreement, or understanding, verbal or written, or any change whatever therein, either with or without notice to either of said obligors, other than the said employee, and repay to the said company all outlay and expense which it might incur in ascertaining the nature and extent of a violation of any of the conditions thereof.

. The petition further alleges, that on the same day, and after the execution and delivery of this bond, the plaintiff entered into an agreement with DeBray to act as its special agent, to make collections for it, and to sell sewing-machines and parts thereof manufactured by the company, and on that day delivered a large amount of property to him of the kind specified under the contract; the agreement being set out and made a part of the petition.

It next alleges the making of another contract, on the 6th day of February, 1893, and alleges that this contract was a continuation and extension of the first agreement.

It next alleges that on the 30th day of April, 1894, it entered into another agreement with DeBray, as a continuation of the first agreement and for a like purpose.   It then alleges the making of similar contracts on June 11, 1894, March 25, 1895, May 13, 1895, July 22, 1895, and September 23, 1896, each as an extension of the original one.   Each of these contracts is set forth by exhibit and made a part of the petition.

It then alleges that DeBray, while in the employ of the plaintiff company by virtue of this agreement and by the terms and condition of the bond, received and collected, for the use of the plaintiff, the sum of $330.78. It is conceded that whatever default occurred was under the last contract.

The first contract recites that DeBray is located at Concordia, Kan.; that he is required to report to the subagency of the company at Salina, Kan.; does not limit his operations to any particular territory in Kansas, but provides that he must have his office at Concordia.   Armstong's place of residence was at Clyde, in the same county.   The contract requires DeBray to deliver all property to the company at Concordia, Kan., upon the termination of the agreement.

By the second contract it appears that DeBray was located at Concordia, Kan.; that he was to report at Salina; to have his place of business at Concordia; and at the termination of that contract to surrender all property to the plaintiff at Salina, Kan.; and it is expressly declared therein :

" That all former agreements in force at the time of the signing of this contract are hereby annulled and

terminated, and that the party of the second part, by
signing his name hereto, releases said company from
any claim or charge he may have against said com-
pany under any prior contract therewith, except cer-
tain commissions earned under the old contract.''

By reference to the third contract, it appears that
DeBray is of St. Joseph, Mo. ; that he is to have his
headquarters at that place ; is to be paid for ex-
penses only while out of there transacting the com-
pany's business ; that upon the termination of the
contract he is to deliver all property in his hands be-
longing to the company at St. Joseph, Mo. ; and it is
expressly delared ''that all former agreements in
force at the signing of this contract are hereby an-
nulled and terminated, and that all claims against
the company are released.''

By the fourth and fifth contracts it appears that
DeBray is of Trenton, Mo. ; has his place of business
there ; makes his reports to the St. Joseph office ; and
that all former agreements are terminated and an-
nulled.  By the sixth agreement it appears that De-
Bray is of Manhattan, Kan. ; that he is under the
supervision of the Kansas City, Mo., office ; and at
the termination of the contract he is required to de-
liver all property of the company to it at Kansas City,
Mo.  This contract likewise annuls and terminates
all former agreements.  By this contract he is re-
quired to supervise the agencies of the company, in
addition to other duties.

The contract of the 22d of July, 1895, exhibit ''G''
of the petition, does not locate him at any place.

By the contract of the 23d of September, 1896, it
appears that he is appointed supervising salesman of
the company in the Lawrence suboffice territory ; and
it was while acting under this contract that the de-
fault occurred upon which this action is based.     ~

To the petition the defendant Armstrong interposed a demurrer, the ground thereof being that the petition did not state facts sufficient to constitute a cause of action against him. The demurrer was overruled, to which the defendant Armstrong excepted, and thereupon he filed his answer. The defendant DeBray was not served with summons in the case nor did he appear in any manner.

The answer first admits the making of the bond, and the execution by DeBray of the contracts set out in the petition, but alleges that they were without the authority of the defendant, and denies all other allegations in the petition. Second, the answer alleges that at the time the defendant Armstrong signed the bond DeBray was located at Concordia, Kan.; was employed by the plaintiff as its agent at Concordia and tributary territory, and upon the understanding that DeBray should continue to work in that territory; that the agency was terminated without the knowledge of the defendant Armstrong, the territory abandoned, and DeBray removed by the plaintiff to St. Joseph, in the state of Missouri, and afterwards to Trenton, in the same state; and afterwards to Manhattan and Lawrence, in the state of Kansas, there to perform new and different duties for the company; that the employment and agency of DeBray were by this removal, by the express contract of the company, terminated, and the defendant Armstrong released from all obligations accruing after the termination of DeBray's employment; that the several contracts constituted different employments, for new and different compensation, at new and different locations and places of employment, with new and different responsibilities, without the knowledge and consent of the defendant Armstrong.

To this answer the plaintiff filed a reply denying the allegations contained in the answer, except those expressly admitted in the petition.

It was stipulated in writing that the defalcation of DeBray occurred at Lawrence, while acting under the agreement of September 23, 1896, and that the defalcation amounted to $330.78.

There was a trial to the court, without a jury. The court made findings of fact and conclusions of law as follows:

### FINDINGS OF FACT.

"1. That the plaintiff now is, and at all times hereinafter mentioned has been, a corporation duly organized under the laws of the state of New Jersey, and doing business, among other places, in the states of Kansas and Missouri.

"2. That on the 17th of October, 1892, said plaintiff entered into an agreement in writing with the defendant DeBray, then a resident of this county, whereby said DeBray was to act as special agent for said plaintiff to sell and dispose of machines and collect accounts entrusted to him, which agreement is fully set out in plaintiff's petition, and is exhibit 'A' thereof.

"3. That on the same day, October 17, 1892, the defendant C. F. Armstrong, then, at all times since and now a resident of this county, as surety, with said DeBray as principal, executed and delivered to the plaintiff his certain writing or bond of that date, for $500, designated 'Employee's Bond,' a true copy of which is set out in plaintiff's petition, and is in words and figures following, to wit:

"KNOW ALL MEN BY THESE PRESENTS, That we, E. R. DeBray, of Concordia, Cloud county, Kansas, and C. F. Armstrong, of Clyde, Kan., obligors, are held and firmly bound unto the Singer Manufacturing Company, a corporation duly incorporated and organized under the laws of the state of New Jersey, doing business in the state of Kansas, and whose corporate existence and capacity to sue are hereby distinctly admitted, in the sum of $500, and ten per cent. attorney's fees, for the payment of which well and truly to be made to the said Singer Manufacturing Company, their successors, representatives, or assigns, without relief from appraisement, valuation,

or stay laws, we bind ourselves, our heirs, executors, and adminis-trators, jointly and severally, firmly, by these presents. Sealed with our seals.    Dated the 17th of October, 1892.

"The condition of the above obligation—which is expressly in-tended as a continuing guaranty—is such, that whereas, the above bounden E. R. DeBray has entered the employ of the said 'The Singer Manufacturing Company,' for the transaction of such busi-ness as they may entrust to him: now, therefore, if the said E R. DeBray shall well and faithfully perform his duties as such em-ployee, and account for, pay over and deliver to the said company all moneys, credits, notes, leases, accounts, books, property and ef-fects of any and every kind and nature whatsoever belonging to them, that may be entrusted to him, or may come into his possession or under his control by virtue of said employment or otherwise, and whether under or in the absence of any present or future contract, agreement, or understanding, verbal or written, or any change what-ever therein, either with or without notice to either of said obli-gors other than the said employee, and repay to the said company all outlay and expense which it may incur in ascertaining the nature and extent of a violation of any of the conditions of this bond, then this obligation to be void; but otherwise to remain in full force and effect; and the said obligors hereby waive all right of homestead and other exemptions under the laws of said state, as against any judgment which may be obtained upon this obligation.

E. R. DeBray.  [Seal.]
C. F. Armstrong.  [Seal.]

"Signed, sealed and delivered in the presence of us.    E. S. Smith.

"4. That on the 6th day of February, 1893, said plaintiff and said DeBray, said DeBray still a resident of this county, entered into another agreement in writ-ing, whereby said DeBray was to act as special agent for plaintiff to sell and dispose of machines and collect accounts entrusted to him, which agreement is fully set out in plaintiff's petition, and is exhibit 'B' thereof.

"5. That in pursuance of said agreement above named between plaintiff and DeBray, plaintiff en-trusted to DeBray certain machines and accounts, which were disposed of and collected by him in ac-cordance with said agreements, and no liability ac-crued to or is claimed by plaintiff on account of any default therein.

"6. That after February 6, 1893, and prior to April 30, 1894, the said DeBray moved from this county to St. Joseph, Mo., where he acted as special agent for plaintiff, having, however, ceased to do so here ; that is, when he went to St. Joseph, Mo., and acted as plaintiff's agent, and did business for it there

in that state, he ceased to do business for it here in this state.

"7. That on the 30th of April, 1894, said plaintiff and said DeBray — said DeBray then residing at St. Joseph, Mo.— entered into another agreement in writing, whereby said DeBray was to act as special agent for plaintiff to sell and dispose of machines and collect accounts entrusted to him, which agreement is set out fully in plaintiff's petition, and is exhibit 'C' thereof; that in pursuance of said agreement plaintiff entrusted to said DeBray certain machines and accounts, which were disposed of and collected by him, and proceeds remitted to plaintiff in accordance with the terms of said contract, and no liability accrued to or is claimed by plaintiff on account of any default therein.

"8. That after the 30th of April, 1895, and prior to June 11 of that year, said DeBray removed from St. Joseph, Mo., to Trenton in that state, and there, on the date last named, said plaintiff and said DeBray entered into another agreement in writing, whereby said DeBray was to act as special agent for said plaintiff to sell and dispose of machines and collect accounts entrusted to him, which agreement is fully set out in plaintiff's petition, and is exhibit 'D' thereof.

"9. That on the 21st of March, 1895, said plaintiff and said DeBray, said DeBray then residing in Trenton, in Missouri, entered into another agreement in writing, whereby said DeBray was to act as special agent for plaintiff to sell and dispose of machines and collect accounts, which agreement is fully set out in plaintiff's petition as exhibit 'E' thereof. That in pursuance of said last two agreements above named plaintiff entrusted to said DeBray, at Trenton, certain machines for disposal and accounts for collection, which were sold and collected and proceeds remitted in accordance with the terms of said agreement, and no liability accrued to or is claimed by plaintiff on account of any default under them.

"10. That after the 21st of March, 1895, and be-

21—7 KAN. APP.

fore the 13th of May, of that year, defendant DeBray removed from Trenton, in the state of Missouri, to Manhattan, Kan., and again became a resident of this state, and on that day, May 13, 1895, plaintiff and said DeBray, said DeBray then a resident of Manhattan, Kan., entered into another agreement in writing, whereby said Debray was to act as special agent for plaintiff to sell and dispose of machines and collect accounts entrusted to him, which agreement is fully set out in plaintiff's petition as exhibit ' F ' thereof.

" 11. That on the 22d of July, 1895, said DeBray still residing at Manhattan in this state, said plaintiff and said DeBray entered into another agreement in writing, whereby said DeBray was to act as salesman and collector for plaintiff, which agreement is fully set out in plaintiff's petition as exhibit ' G ' thereof. That in pursuance of said last two agreements the plaintiff entrusted to said DeBray, at Manhattan, certain machines for disposal and accounts for collection, which were sold and collected and proceeds remitted in accordance with the terms of said contract, and no liability accrued to or is claimed by plaintiff on account of any default under them or either of them.

" 12. After July 22, 1895, and before the 23d of September, 1896, the said DeBray removed from Manhattan, in Riley county, to Lawrence, in Douglas county, in this state, and on the date last named, September 23, 1896, the said defendant, then a resident of Douglas county, entered into another contract in writing, to act as supervising salesman of the plaintiff, and to sell machines and collect accounts entrusted to him, which agreement is fully set out in plaintiff's petition, and is plaintiff's exhibit ' H ' thereof.

" 13. That in pursuance of said agreement said plaintiff entrusted to said DeBray machines for sale and accounts for collection while at Lawrence ; that though said DeBray received said machines and accounts, and sold and disposed of the machines and collected the accounts, he did not remit the proceeds to plaintiff, or did any one for him, but kept, converted and retained the same to his own use to the extent or amount of $330.78, and notified plaintiff thereof.

"14. The conduct of said DeBray in the transaction of plaintiff's business at Lawrence, as above, not being satisfactory to plaintiff, plaintiff, in accordance with the terms of its agreement with said DeBray, sent a special agent to Lawrence to investigate and to examine into the business so entrusted to him, who found upon such examination that said DeBray had collected and converted of the property of the plaintiff, or proceeds thereof, to the extent of the amount above mentioned, and left that vicinity. The amount of the shortage or default was the same as reported by DeBray. The reasonable compensation and expense of said agent paid by said company is the sum of $75.83.

"15. By the terms of said agreement of September 23, 1896, at Lawrence, the said DeBray was to receive commission on all proceeds collected and remitted to the company, which if all proceeds collected had been remitted would amount to the sum of $45.97.

"16. At the time of the execution of said bond by said defendant Armstrong, the said Armstrong knew that said DeBray had entered or was about to enter the employment of the plaintiff. He did not know or inquire as to what contract, if any, had been made between them, and, if any, the terms thereof, or whether oral or in writing, nor did he after said DeBray left this state know or inquire whether he was still in the employ of the plaintiff, or what, if any, contracts there were or had been between them, nor did he take any steps to notify plaintiff that he would or would not be further liable or agree to, or dissent from, further liability for transactions of said DeBray with the company. However, after plaintiff had ascertained the default of DeBray as above, plaintiff applied to and requested said Armstrong to pay and make the same good, which said Armstrong declined to do, and denied all liability to plaintiff on said bond.

"17. That the said DeBray, although acting under the different contracts and agreements, and at the different places herein named, was continuously in the employment of this plaintiff, from the 17th day of

October, 1892, up to the time when the defalcations occurred under the contract made at Lawrence, Kan., and dated September 23, 1896. The defendant De-Bray has not been served with summons, nor does he appear herein either in person or by attorney.''

### CONCLUSIONS OF LAW.

'' 1. If the defendant Armstrong is liable to the plaintiff in this action, it is because of the execution and delivery of the bond sued on and set out in finding of fact No. 3. And if he is so liable, he is liable (1) for the amount of the default of the said DeBray to the plaintiff as is found in finding of fact No. 12, to wit, the sum of $330.78 ; and, ( 2 ) for the expense of plaintiff in ascertaining the nature and extent of said default, as found in finding of fact No. 14, to wit, the sum of $75.83, making a total liability of $406.61.

''2. If defendant Armstrong is liable on said bond for the amount of said default and the expense of ascertaining the same, he is not liable for attorney fees in enforcing or in endeavoring to enforce said liability. Such attorney fee, if defendant was liable therefor, is now found to be the sum of thirty-three dollars. Defendant, however, is not liable for attorney fees herein — not because attorney fees may not be collected on a bond of this nature, but for the reason that, though the limit of liability in the bond is $500 plus ten per cent. attorney fees, the conditions of the bond are only that the bondsmen shall be liable for the default of the principal in the accounting for and paying over 'everything' that may be entrusted to him, and the outlay and expense of the obligee in ascertaining the nature and extent of such liability, and there is no condition or provision in the bond for any expense of attorney or otherwise in recovering or in endeavoring to recover such liability—that is, the default, the amount of the default, and the expense in ascertaining the same.

'' 3. If the defendant Armstrong is liable on the bond, he is, as aforesaid, liable for the amount of the default, that is, $330.78, and the expense of as-

certaining the same, $75.83, making a total of $406.61, and he is not entitled to have deducted therefrom, or from any portion thereof, the commission found in finding of fact No. 15, to wit, $45.97, or any part thereof, as under the contract the commission is only due for and on account of collection and remittance, and not for non-remittance and conversion.

"4. Though the default of said DeBray to plaintiff is as found $330.78, plus $75.83, making a total of $406.61, yet the defendant Armstrong is in no wise liable therefor, for it is not in the terms of the bond, or the understanding of the parties thereto, that the said surety Armstrong should be liable for all acts of the principal DeBray to the obligee, the plaintiff, of what nature soever, or wherever done or performed; and whenever the principal, DeBray, with the consent of the obligee, the plaintiff, ceased to do business for it here in the territory covered by the first contract, and where the parties resided when the bond and contract were executed, and removed to another state, although continuing for it in the same business there, the surety, Armstong, thereby became and was released and relieved from all liability on the bond not arising from DeBray's employment here; and liability having ceased, the return of the principal, DeBray, to this state, especially to another and distant territory from where principal was employed when bond was given and for which first contract was made, did not revive liability.

" 5. And even if said DeBray had not, with the consent of plaintiff, ceased to act for it in this state, the territory recited in the bond, where the plaintiff was doing business, and removed to another and different state, and thereby become relieved and released from liability on account of anything not then done, yet, when the said DeBray, with the consent of plaintiff, ceased to act for it in the territory where the bond was given and said DeBray and Armstrong then resided, and with consent of plaintiff removed to and acted for it in an entirely different, distinct and not adjoining territory, to wit, Lawrence, Kan., where said default all accrued, the said Armstrong thereby

became and was released and not liable for or on account of such default or expense of ascertaining the same.

"6. The plaintiff is not entitled to judgment against defendant Armstrong in this action ; nor against principal DeBray, as he has not been served nor has he appeared herein. The defendant Armstrong is entitled to judgment against plaintiff for his costs."

Upon the findings of fact, the plaintiff moved for judgment for $406.61, which the court denied. The plaintiff moved for a new trial, and among other grounds therefor are the following : ( 1 ) That the decision is not sustained by sufficient evidence and findings of fact, and is contrary to law. ( 2 ) Errors of law occurring at the trial and excepted to at the time by the plaintiff. ( 3 ) That the court erred in its conclusions of law numbered 2, 3, 4, 5 and 6. ( 4 ) That the court erred in denying the plaintiff's motion for judgment upon the findings of fact. This motion was likewise denied, and there was judgment for the defendant for costs.

The assignments of error, though numerous, present but three questions for consideration, which are : ( 1 ) Did the court err in receiving and considering evidence of the circumstances surrounding the parties at the time the bond was signed by the defendant, for the purpose of arriving at the true intention of the parties? ( 2 ) Was the defendant Armstrong released from liability under the bond for defalcation of De-Bray occurring after and by reason of the termination of the contract of employment in Kansas and the removal of DeBray to and his subsequent employment in the state of Missouri? and, ( 3 ) Could the plaintiff, in any event, recover attorney's fees in this suit.

I. In the brief of counsel for plaintiff in error we find a reference to the case of *Beers v. Wolf*, 116 Mo.

184, as supporting their contention upon the first question. In that case the court says :

"In the construction of a contract of a surety or guarantor, as well as of every other contract, the true question is, What was the intention of the parties, as disclosed by the instrument, read in the light of the surrounding circumstances?"

And, without doubt, this states the law correctly. The court is of right entitled to know what were the circumstances surrounding the parties at the time, in order that it may correctly apply the writing to the subject-matter thereof and truly interpret their intention respecting this subject-matter as expressed by them therein.

II. Was it contemplated by Armstrong that he should be liable thereafter for all time and at all places for the default of DeBray in his transactions with the plaintiff company under any and all contracts? The rule is, that the termination of an employment terminates the obligation of a surety on a bond of the employee. The plaintiff in its petition says that these subsequent contracts were extensions of and continuations of the original contract; but each of the succeeding contracts expressly provides that all former contracts are canceled and annulled. At the time Armstrong signed this bond, it was contemplated by the contract of employment referred to in the bond that DeBray should carry on the business of the company at Concordia, Kan., as agent for the company at that place, and within the state of Kansas. This is one recital of the bond.

It is true that the bond says, in the condition therein written, that if DeBray shall faithfully perform his duties and account for and pay over and deliver to the company all money, credits, notes, leases, ac-

counts, books, property and effects of any and every kind and nature whatsoever belonging to them, that may be entrusted to him or may may come into his possession or under his control by virtue of his said employment or otherwise, and whether under or in the absence of any present or future contract, agreement, or understanding, verbal or written, or any change whatever therein, either with or without notice to either of said obligors, other than said employee, and repay to the said company all outlay and expense which it may incur in ascertaining the nature and extent of a violation of this bond, the bond shall be void; otherwise to remain in full force and effect.  But it nowhere reserves the right to the company to change its business and remove DeBray from the state of Kansas to the state of Missouri.  No such change could have been contemplated.  While it is true that the plaintiff, by these provisions in the bond, reserved the right to change the duties of DeBray, to enlarge the scope of his duties in the state, and to change his compensation, all this it might do without taking from under the observation of Armstrong the conduct of the business of DeBray.

In *Wheeler & Wilson Mfg. Co. v. Brown et al.*, 65 Wis. 99, the same contention was made that is urged by counsel for plaintiff in error in this case.  In the course of the court's opinion it is said ·

"If the construction contended for by the learned counsel for the company is the true construction of the guaranty, then the sureties would have been liable had the company at once after the contract was signed sent the agent to New York, New Orleans, San Francisco, or even London or Paris, to do business for them.  Such a result cannot fairly be said to have been contemplated by the parties when the appellants signed the guaranty.  We think that under

no circumstances can the sureties be held after the agent has abandoned business in the territory particularly described in the contract, especially when such abandonment is with the consent and approval of the company."

The court says further — and this has been reiterated by our own supreme court:

"Sureties are favorites of the law, and have a right to stand upon the strict terms of their obligations when ascertained. Beyond burdens thus taken upon themselves they are not bound."

Counsel for plaintiff in error cite the case of *Howe Sewing Machine Co. v. Layman*, 88 Ill. 39, upon this question. The court in that case says:

"The bond provides that it shall be binding if the business of the canvassers or their location should be changed by the company, notwithstanding they only agreed specifically to work at Virden or in its vicinity; hence, when the change was made they were bound to accept the change and could not have refused, and they do not seem to have interposed any objection; therefore the bond remained binding on all obligors for previous as well as for future acts of Layman & Duncan."

There is nothing in the condition of this bond by which the plaintiff reserved the right to remove their business and their agent from the state of Kansas to another state. The words we have recited are not sufficient therefor.

Justice Story, in the case of *Miller v. Steward*, 9 Wheat. 703, says:

"Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent and in the manner and under the circumstances pointed out in his obligation he is bound, and no further. He has a right to stand

upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal. . . . The whole series of cases proceed upon the grounds that the undertaking of the surety is to receive a strict interpretation, and is not to be extended beyond the fair scope of its terms.''

On page 706 of the same case, continuing, he says :

''Nothing can be better settled than the doctrine that if an obligation be dependent upon another obligation, and the latter be discharged or become void, the former is also discharged.''

By the very terms of these subsequent contracts and the removal of DeBray from the state of Kansas to the state of Missouri, the Kansas contracts are annulled and discharged ; hence, the obligation of the surety on the bond guaranteeing the performance thereof is likewise discharged. Once the guaranty ceased to be binding by the act of the plaintiff it could not revive it.

III. The trial court gave as its reason for holding against the recovery of attorney's fees that it was nowhere provided in the condition of the bond that Armstrong should pay attorney's fees. It is only necessary to say that paragraph 3896 of the General Statutes of 1889 ( Gen. Stat. 1897, ch. 119, § 12 ) expressly provides that it shall be unlawful for any person, company or corporation to contract for the payment of attorney's fees in any note, bill, bond, or mortgage, and that any such contract shall be null and void, and that no court, after the passage of the act, should render any judgment or decree by which any attorney's fees should be allowed or charged to the maker of any promissory note, bill of exchange, bond, mortgage, or other evidence of indebtedness, by way of fees, expenses, costs, or otherwise. This is section 1 of chapter 77, Laws of 1876, and went into effect March 1, 1876. It is immaterial what reason the

Singer Co. v. Armstrong.

court assigned for holding that the plaintiff was not entitled to attorney's fees when the law forbids their allowance in any manner. This, however, becomes immaterial by reason of our answer to the second proposition.

The conclusions of the district court upon these questions are in our opinion correct, and are decisive of the case.

The judgment is affirmed.

McElroy, J., concurring.

Wells, J. (dissenting) : I cannot concur in the first section of the syllabus or in the judgment of the court as herein rendered. It seems to me that the bond expressly provided for indemnity under all the contracts made, either in scope of contract or territory, as the liability was for all matters entrusted to him, "whether under *or* in the absence of any present or future contracts, agreement, or understanding, verbal or written, or any change whatever therein." The only thing in the bond that in any way indicates any territorial limit to the business to be done by the agent is the words "doing business in the state of Kansas," following the name of the plaintiff at the beginning of the bond. It does not seem to me that this would nullify the expressed assumption of liability for acts done under any present or future contract, or in the absence of any contract. It is not clear what effect is to be given to those words first above quoted if the liability is to be limited to obligations assumed under the first contract only, or is to be restricted to loss occurring in any particular territory.