## ROUSS v. KING.

1. EVIDENCE given as of witnesses' knowledge, with nothing to indicate the contrary, is competent, although it refer to written accounts and admissions of their correctness by defendant by indorsements, as to which he had testified and about which there was no serious contest.

2. EVIDENCE that debtor refused to take out insurance and refused to cancel doubtful policies was relevant here as tending to rebut charge of lack of diligence on part of creditor in failing to keep up the insurance.

3. EVIDENCE under facts of this case to the effect that there was no agreement that the notes and contract were to be null and void in case the business was moved to another place, tended to deny the existence of any special agreement of that import.

4. INSURANCE—SURETY.—Where the right to insure a stock of goods is absolutely in control of the debtor owner, he nor the surety has any right to require creditor to accept certain policies, nor was the debtor under any obligation to cancel policies on advice of creditor.

5. IBID.—IBID.—NEGLIGENCE.—If creditor assumes responsibility of advising debtor as to insurance of stock of goods and provides policies with acquiescence of debtor he becomes trustee of insured charged with exercise of reasonable diligence, but his responsibility to the surety ends as soon as he gives the debtor the information he has as to solvency of insurer and offers to follow his instructions.

6. CONTRACTS.—THE SURETY to contract for sale of goods to "J. B. King, of Bishopville," is not relieved because of removal of business to another town, because those words are mere *descriptio personae.*

Before WATTS, J., Richland, July, 1904. Affirmed.

Action by W. R. Rouss, as executor of Charles Broadway Rouss, against J. B. King and R. B. King. From judgment for plaintiff, defendant R. B. King appeals.

*Mr. D. W. Robinson,* for appellant, cites: *Objections to depositions evidence may be made when read in Court:* 9 Rich., 271; 29 S. C., 578. *Collateral taken by principal debtor enures to benefit of surety:* Brandt on Sur., 2 ed., secs. 428, 440; 56 S. C., 575; Jones on Pl. and Col. Sec., sec. 514; 112 Fed., 901; 49 Ill., 370; 108 U. S., 260. *Change, diversion or loss of collateral releases surety:* 28

Ency., 2 ed., 516, 518; 56 S. C., 575; Brandt on Sur., secs. 378, 429; 112 Fed. R., 901; 10 S. C., 245; 51 S. C., 256. *Surety is bound by contract he makes and any alteration releases him:* 21 L. R. A., 415; 51 S. C., 124; 23 S. C., 592; 5 Pet., 536; 9 Wheat., 703; Stearns on Sur., sec. 72; 18 S. C., 1; Brandt on Sur., 2 ed., sec. 93; 14 Ency., 2 ed., 1162; 4 L. R. A., 243; 5 Md., 102; 186 U. S., 316; 21 Wall., 652; 2 Saund., 412; 4 Taunt., 493; 14 Ill., 24.

*Mr. J. S. Muller,* contra, cites: *Testimony as of witnesses' own knowledge is not subject to objection of hearsay:* 56 S. C., 385. *Should objection to deposition evidence be made when taken?* 9 R., 269; 25 S. C., 24; 29 S. C., 560; 38 S. C., 391; 3 Sand., 403; 24 Ala., 329; 22 S. C., 46; 32 Ala., 500; 4 Greene, 416; 20 Ala., 230; 38 Ia., 564; 18 Me., 59; 112 Ala., 167; 16 Me., 128, 257; 10 Ill. App., 191; 108 Ill., 617; 44 Ill. App., 527; 44 Neb., 311; 30 Ala., 562; 70 U. S., 107. *Any release of security only releases surety pro tanto:* Stearn's Law of Sur., 137; Brandt on Sur., sec. 370.

April 19, 1906. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The former appeal in this case was from an order of nonsuit which this Court held was erroneously granted—69 S. C., 163. Upon the second trial the plaintiff recovered a verdict, and the defendant R. B. King, who is the surety, appeals.

The written contracts between Charles B. Rouss, of whose will the plaintiff is the executor, and J. B. King as principal and the defendant R. B. King as surety, and a summary of the course of the account between C. B. Rouss and J. B. King are fully set out in the opinion then rendered, and they need not be here repeated.

The Court in the former appeal had under consideration only the question whether the plaintiff had made out a case for the consideration of the jury, but in setting aside the nonsuit these points were necessarily decided: (1) the con-

tract provided for a continuous credit; (2) the creditor did not discharge the surety by extending to the principal debtor credit without the knowledge of the surety beyond the amount to which the liability of the surety was limited; (3) the creditor in the absence of instructions from the debtor had a right to apply credits to the general account and hold the surety for the balance to the extent of the amount covered by his undertaking; (4) the removal of the business of the principal debtor from Bishopville to Columbia did not operate as a discharge of the surety, merely because the principal debtor was spoken of in the contract as J. B. King of Bishopville; (5) the surety was not discharged by the refusal of the creditor to accept additional security, the additional security in this case being insurance policies; nor by the fact that one of the policies subsequently taken out by the creditor himself with the assent of the debtor in Victoria Montreal Insurance Company became valueless, the only evidence before the Court going to show it had become so without fault on the part of the creditor.

With this statement of the scope of the decision in the former appeal, we proceed to the consideration of defendant's exceptions.

The first five exceptions charge error in the admission of evidence of the witness Feeney, the credit manager and general bookkeeper of C. B. Rouss, as to the custom of sending out statements of accounts, the receipt by the defendants of these statements, their acknowledgments of the correctness of the statements by indorsements thereon; as to the goods being ordered by defendants, the prices charged being reasonable and agreed to by the defendants, and the entry of all credits; as to notice to defendants that it would be advisable to cancel the policy of insurance in the Victoria Montreal Insurance Company and obtain another policy in its stead; the refusal of J. B. King to take out another policy, giving as a reason that he could not afford to pay the premium, and the failure of C. B. Rouss to take

out another policy because he relied on the notes and contracts here in suit.

The objection to this evidence was that it was not the best evidence, and that it related to matters of which witness had no personal knowledge. The testimony of this witness was the first introduced, and it is all given as if in his own knowledge, with nothing to inform the Court that it was based on hearsay. It is said in *Sloan* v. *Hunter,* 56 S. C., 385, 390, 34 S. E., 658, that like testimony there under consideration "was not liable to exclusion as hearsay, for while there is great probability that much of her testimony was founded on what she had heard, still it was given in answer to a question as to her knowledge, and if it was really hearsay it was incumbent on the objector to make that fact appear to the Court." It is true, the witness does refer to written acknowledgments of the correctness of the statements by the defendants, and attached to his evidence only the acknowledgment of J. B. King, the principal debtor, but he had already testified to the correctness of the account, and there was no real dispute as to the amount of the account. The evidence that J. B. King refused to take out a policy of insurance and cancel the doubtful policy of the Victoria Montreal Insurance Company was relevant, because it tended to rebut the charge of lack of diligence on the part of Rouss in failing to keep up the insurance.

The evidence of this witness to the effect that there was no agreement that the notes and contracts were to be null and void in case the business was moved from Bishopville may be regarded as a denial of the existence of any separate agreement of that import, and so viewed it was clearly competent; the statement of the witness as to his construction of the contracts sued on being incompetent, was struck out by the order of the Circuit Judge.

This evidence was taken *de bene esse,* and the respondent makes the point the objection not having been made when the evidence was taken, comes too late at the trial. It is

not necessary to decide this question, because as we have seen the objection if made in time was properly overruled.

The defendant next submits there was error in excluding evidence as to insurance policies taken out by J. B. King, the principal debtor, and the refusal of Rouss to accept them.

Rouss had no claim on the stock of goods and the contract gave him no control of the insurance, and, therefore, under the contract he had no responsibility with relation to it. When, therefore, the insurance policies issued to King in Columbia were sent to him, neither the principal debtor nor the surety had any right to require him to take them. Nor was the debtor under any obligation to cancel them on his advice. The insurance was absolutely under the control of J. B. King. All evidence, therefore, as to the refusal of Rouss to accept the policies sent to him was irrelevant, whether his reason for such refusal was sound or not. The charge of the Circuit Judge was in accordance with this view and there was no error in refusing requests to the contrary.

When, however, Rouss subsequently took upon himself the responsibility of advising as to the insurance and procured policies on the stock of goods with the acquiescence of the debtor who was the owner, he became a trustee as to the insurance charged with the exercise of reasonable diligence in seeing to the solvency of the insurer as well as other matters which might affect the value of the insurance. But it is manifest this responsibility would end as soon as he gave the owner of the property the information which he himself had, and offered to follow his directions. On this point the Circuit Judge charged: "If J. B. King took out insurance on this property and turned it over to Rouss and Rouss did not care to receive it, he was not obliged to receive it. If Rouss took out a policy of insurance on the property of King to secure him, and paid the insurance premiums and charged them to King, and J. B. King acquiesced in that, R. B. King would owe him on the account for whatever amount of the premiums was paid. If

Rouss exercised the same care and prudence an ordinary man would do in the management of his own affairs, and if he through an error of judgment, through no carelessness and negligence or want of care on his part, happened to get into a company which was weak, but he honestly believed it was all right, and exercised the same prudence and care an ordinary man would do in the management of his own affairs, then if that company should afterwards become insolvent, yet King couldn't complain and claim Rouss was responsible for a loss of that sort, under circumstances of that sort Rouss would not become the insurer, the guarantor of the solvency of the insurance company."

The following request and others of similar import made by defendant, however, the Circuit Judge refused to charge: "If a creditor holding a contract of suretyship undertakes to take additional security for his benefit, and further security in the shape of fire insurance on the goods of the principal debtor, and does assume to take out such insurance on goods of the debtor and acts on his own judgment and refuses the judgment and advice of the debtor; and such creditor negligently fails to take such insurance in a reliable company, or negligently allows the same to lapse or negligently cancels the same, and the debtor thereby suffers loss to the extent of the contract of suretyship, the surety is released."

On the former appeal from an order of nonsuit only the evidence offered by the plaintiff was before the Court, and it not only furnished no ground for imputing negligence to Rouss in taking out the insurance or for not taking out other insurance when the insurer became weak, but if credible it completely exonerated him from responsibility as to the loss of the insurance. There is nothing in defendant's evidence to show that Rouss knew of the actual insolvency of the company before the fire, and failed to disclose that fact to King. His letter telling King of the weakness of the company and advising him to take out other insurance was all the notice that a reasonable business man would desire to lead him to take other insurance if he desired it, and certainly it was

sufficient to place the responsibility on him as to cancelling the poli y and taking out other insurance. It seems to us that appellant's fundamental error is in maintaining that there is evidence that Rouss undertook to control the insurance. He only advised King, the principal debtor, and there is no evidence that he did not keep him posted so as to enable him to protect himself by insurance. He procured the insurance with the assent of King, the owner of the property, and when he became aware the company was not safe he notified King and advised him to take other insurance, but King refused, and the policy became worthless not from Rouss having cancelled or allowing it to lapse or from any other act or omission on his part, but because of King's refusal to heed the advice of Rouss as to the weakness of the company before the destruction of the property.

The Circuit Judge charged, in effect, that the removal by J. B. King of his business from Bishopville to Columbia did not release the surety merely because the written contract provided the goods were to be sold to "J. B. King of Bishopville." This was in accordance with the opinion of this Court on the former appeal. In construing the contract these words were held to be nothing more than *descriptio personae*. That this was the defendant's understanding is indicated by the fact that upon receiving notice from Rouss after the removal to Columbia that J. B. King, his principal, was not making remittances according to the contract, he went to Columbia to look into the business, thus recognizing his own interest in the matter.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.