JAMES B. BRADSHAW and Another v. L. ELDRIDGE BARBER.[1]

May 29, 1914.

Nos. 18,569—(109).

**Guaranty to pay debts — limitation as to time and place.**

A commercial credit guaranty couched in general terms, without express limitation as to time, amount, or place, but executed for the purpose of enabling the person whose credit was guaranteed to procure goods for a particular business located at a certain place, construed and *held*, under the facts of the case, not to extend to the credit of such person after she had ceased to do business at that place and while she was conducting a business of the same kind subsequently established in another state.

[1] Reported in 147 N. W. 650.

Action in the district court for St. Louis county to recover $555.51 upon defendant's written agreement to be responsible to plaintiffs for the payment of any indebtedness of Lottie J. Barber on account of goods sold and delivered. The answer was a general denial. The case was tried before Ensign, J., who denied defendant's motion to dismiss the action and his motion for a directed verdict, and a jury which returned a verdict in favor of plaintiffs for $585.67. Defendant's motion for judgment notwitstanding the verdict was granted. From the judgment in favor of defendant notwithstanding the verdict, plaintiffs appealed. Affirmed.

*Courtney & Courtney,* for appellants.

*Crasweller, Crasweller & Blu,* for respondent.

PHILIP E. BROWN, J.

Action to recover upon a continuing guaranty. Plaintiffs had a verdict, which, on defendant's motion, was vacated and judgment ordered for defendant notwithstanding. Plaintiffs appealed from a judgment entered accordingly.

The facts are undisputed. In 1910 defendant's sister, Miss Barber, contemplated engaging in the millinery business at Bridgewater, South Dakota, and sought to purchase stock therefor from plaintiffs. In order that she might obtain credit, defendant executed the following instrument, addressed to plaintiffs:

"In consideration of your furnishing to Miss Lottie J. Barber of Bridgewater, S. Dak., goods as desired by her for four months from date and to the amount of Two Hundred Dollars ($200.00), and such additional goods as she may desire within said period, or from time to time thereafter, I hereby agree to be liable for the same, and extensions of time of payment may be granted by you without releasing me from such liability. Notice of acceptance of this guaranty and default in payment is hereby expressly waived."

Plaintiffs duly notified defendant of acceptance of the guaranty, and between its date, March 7, 1910, and June, 1912, Miss Barber conducted such business at Bridgewater, purchasing goods from plaintiffs on credit and making payments on account from time to time. During the month last mentioned she disposed of the business,

of which plaintiffs were advised, being then indebted to them in the sum of $37.27. Later she again engaged in business of the same kind at Two Harbors, Minnesota, continuing to purchase goods on credit from plaintiffs, until October, 1912, when she again went out of business. She remitted from Two Harbors only $150, which plaintiffs first applied in payment of the $37.27 balance, leaving due them, for goods purchased by her for the Two Harbor business, the sum of $555.51, for which amount defendant is sought to be charged as guarantor.

Defendant urges several grounds in support of the court's action, among them that the guaranty, being given to pay for goods purchased for the Bridgewater business, he cannot be held for any purchases made from Two Harbors; which presents the only question necessary to determine. Considering the guaranty literally, this contention could not be sustained; for, if its wording alone is controlling, defendant must be deemed to have bound himself to pay for all goods of all kinds which his sister might purchase from plaintiffs, without limitation as to time or place. Such broad interpretation is inadmissible; for this court has held that a guaranty without limitation in terms as to time or amount cannot be unreasonably extended as to either, and each must be reasonable under all the circumstances of the case. Lehigh Coal & Iron Co. v. Scallen, 61 Minn. 63, 63 N. W. 245. Should the same rule be applied as to place? This question depends upon the applicable rule of construction. It should be remembered that contracts of this kind are in general use in mercantile transactions and that they facilitate business in many ways, among other things often aiding persons to engage in profitable enterprises which, from lack of credit, they would otherwise be unable to undertake. Failure to bear these characteristics in mind and the close relation between guaranty and suretyship on the one hand, and an exaggeration of the rights of creditors on the other, have led to the promulgation of antagonistic rules, one calling for strict and the other for liberal construction of the guarantor's undertaking. The true rule, however, and the one sustained by what appeals to us as the better considered authorities, lies between these two, and is that a mercantile credit guaranty should be neither extended beyond the

125 M.—31.

fair import of its terms nor unduly restricted by technical interpretation. This rule is well stated in Hooper v. Hooper, 81 Md. 155, 169, 31 Atl. 508, 510, 48 Am. St. 496:

"A guaranty," said Mr. Justice McSherry at page 169 [31 Atl. 510, 48 Am. St. 496] "is a mercantile instrument to be construed according to what is fairly to be presumed to have been the understanding of the parties, without any strict technical accuracy, but in furtherance of its spirit and liberally to promote the use and convenience of commercial intercourse. It should be given that effect which will best accord with the intention of the parties as manifested by the terms of the guaranty, taken in connection with the subject matter to which it relates, and neither enlarging the words beyond their natural import in favor of creditor, nor restricting them in aid of the surety. The circumstances accompanying the whole transaction may be looked to in ascertaining the understanding of the parties."

Again, in London & San Francisco Bank v. Parrott, 125 Cal. 472, [58 Pac. 164, at page 165, 73 Am. St. 64] the rule is clearly propounded, at pages 481, and 482, as follows:

"When it is said that a guarantor is entitled to stand upon the strict terms of his guaranty, nothing more is intended than that he is not to be held liable for anything that is not within the express terms of the instrument in which his guaranty is contained; that his liability is not to be extended by implication beyond these limits, or to other objects than those expressed in the instrument of guaranty. But for the purpose of ascertaining the meaning of the language which he has used, and thus determining the extent of his guaranty, the same rules of construction are to be applied as are applied in the construction of other instruments. His liability is not to be extended by implication beyond the terms of his guaranty as thus ascertained. The language used by him is, however, to receive a fair and reasonable interpretation for the purpose of effecting the objects for which he made the instrument, and the purpose to which it was to be applied."

See 105 Am. St. 520, note. See also Fall v. Youmans, 67 Minn.

83, 84, 69 N. W. 697, 698, 64 Am. St. 390, where Mr. Justice Mitchell said, with reference to a guaranty of collection of a note:

"The guaranty must be interpreted in reference to the situation and condition of the maker of the note, actual or rightfully assumed, at the time the guaranty was made."

And, for an illustrative case indicating how far the courts have gone in this connection, see John H. Lyon & Co. v. Plum, 75 N. J. L. 883, 69 Atl. 209, 127 Am. St. 858, 15 Ann. Cas. 1019.

The ruling of this court in Lehigh Coal & Iron Co. v. Scallen, supra, was merely an application of the rule of construction above stated in determining the scope of the guaranty with reference to time and amount, and we can conceive of no reason why the same rule should not be applied in determining the question as to limitation of place. The true inquiry in each case is: What may fairly be said to have been contemplated by the parties when the instrument was executed, giving due effect to every part and also having proper regard for surrounding circumstances? The answer to this inquiry in the present case is, clearly, that neither of the parties contemplated, when the guaranty was executed, that Miss Barber would engage in business in Minnesota; for her change of location resulted wholly from causes arising long thereafter. Hence, notwithstanding the general language used, we hold, following the rules stated, that defendant was not bound to respond for purchases made while Miss Barber was in business at Two Harbors. Otherwise it would follow that, no matter where she might subsequently have located in business, defendant would still have remained liable. He might well have been willing to guarantee her purchases while she was doing business at Bridgewater, and yet have refused to bind himself with reference to another location had such been under consideration. In the nature of things such a change of location could not be made without materially affecting the risk, thus constituting a departure from the original engagement of the parties. If, therefore, the guarantor be held bound without subsequent consent, which does not here appear, it would have to be by virtue of a contract upon the terms of which the minds of the parties never met. *Prima facie,* a guaranty of the kind under consideration is essentially local.

The conclusion reached amounts merely to an extension of our prior holdings as to time and amount by applying the principle underlying them to the correlated element of place. And, while there is dearth of authority specifically in point, our determination is not unsupported by closely analogous cases. See Wheeler & Wilson Mnfg. Co. v. Brown, 65 Wis. 99, 25 N. W. 427, 26 N. W. 564; Johnson v. Brown, 51 Ga. 498; Singer Mnfg. Co. v. Armstrong, 7 Kan. App. 314, 54 Pac. 571. Rouss v. King, 74 S. C. 251, 54 S. E. 615, trends to the contrary.

Judgment affirmed.