FURST *v.* LARSEN.

1. GUARANTY—CONTINUING GUARANTY.
   Guaranty to pay for goods furnished on credit to dealer was continuing one.

2. SAME—DOES NOT EXTEND TO ANOTHER STATE.
   Guaranty to pay for goods furnished on credit to dealer in certain location did not extend to business carried on by him in another State to which he had removed.

3. SAME—GUARANTORS RELEASED FROM LIABILITY BY REMOVAL NOT ENTITLED TO CREDIT.
   Guarantors promising to pay for goods furnished on credit to dealer in certain location, who are released from liability for goods furnished him after his removal to another State, are not entitled to credit for payments made by him in new location.

On the question as to when a guarantee is a continuing one, see annotation in 39 L. R. A. (N. S.) 724.

Error to Van Buren; Warner (Glenn E.), J. Submitted October 15, 1930. (Docket No. 93, Calendar No. 35,120.) Decided December 2, 1930. Rehearing denied January 23, 1931.

Assumpsit by Frank E. Furst and Fred G. Thomas, as copartners under the firm name of Furst & Thomas, against Adolph G. Larsen, Harry Lieberman, and O. H. Lindberg, on a contract and guaranty. From a directed verdict and judgment for amount claimed by plaintiff, defendants Lieberman and Lindberg bring error. Judgment affirmed on condition that amount is reduced.

*David Anderson,* for plaintiffs.

*Earl L. Burhans,* for defendants Lieberman and Lindberg.

WIEST, C. J. In February, 1923, Adolph G. Larsen, then living on a farm in Covert township, Van Buren county, near Coloma, wanted to engage in selling, in that vicinity, medicinal products of plaintiff company, and entered into a contract to that end and procured two of his neighbors, defendants herein, to sign a guaranty that Larsen would pay for goods furnished him on credit, and, if he did not do so, then they promised to pay his indebtedness without any proceeding first taken against Larsen. Notice of acceptance of the guaranty was waived. The contract, signed by Larsen, and the guaranty, signed by defendants, were sent to plaintiffs at their place of business in Freeport, Illinois, and there accepted. Goods were ordered by and sent to Larsen under the contract. In November, 1925, Mr. Larsen had on hand goods not paid for and one Otto Hingst of Coloma took over the goods, and plaintiffs credited Larsen's account with the amount Hingst was to

pay and a contract and guaranty, for future pur-
chases by Mr. Hingst, was entered into between him
and the plaintiffs.  Thereupon Mr. Larsen moved to
Kenosha, Wisconsin, and without any new contract
ordered from and was furnished goods by plaintiffs
until October, 1928, when he quit, and at that time
owed plaintiffs $1,003.74.  This suit is to recover
that sum from defendants Lieberman and Lindberg
upon their guaranty.  Mr. Larsen was made a party
defendant, but the record does not disclose any serv-
ice of process upon him or appearance by him.  In
the circuit court plaintiffs obtained a directed ver-
dict and had judgment for the amount claimed.

Defendants insist that their guaranty should be
held to cover only business within a contemplated
localized territory, while plaintiffs claim that the
guaranty was a continuing one and unlimited as to
place of business of Mr. Larsen.

The guaranty was a continuing one.  Did it ex-
tend to the dealings in Wisconsin?  Plaintiffs' coun-
sel cites *Marshall Field & Co.* v. *Haish,* 85 Ill. App.
164, holding that removal of such a dealer to an-
other place in the same State did not release a guar-
antor.  Defendants' counsel cites *Bradshaw* v. *Bar-
ber,* 125 Minn. 479 (147 N. W. 650), holding that,
where a dealer closed business in the State of South
Dakota, where engaged at the time of the guaranty,
and removed to another State and there carried on
the same kind of business, the guaranty did not ex-
tend to the business at the new location.  We think
the Minnesota case the better reasoned and quote
therefrom, with approval, the following:

"What may fairly be said to have been con-
templated by the parties when the instrument was
executed, giving due effect to every part and also
having proper regard for surrounding circum-

stances? The answer to this inquiry in the present case is, clearly, that neither of the parties contemplated, when the guaranty was executed, that Miss Barber would engage in business in Minnesota; for her change of location resulted wholly from causes arising long thereafter. Hence, notwithstanding the general language used, we hold, following the rules stated, that defendant was not bound to respond for purchases made while Miss Barber was in business at Two Harbors. Otherwise it would follow that, no matter where she might subsequently have located in business, defendant would still have remained liable. He might well have been willing to guarantee her purchases while she was doing business at Bridgewater, and yet have refused to bind himself with reference to another location had such been under consideration. In the nature of things such a change of location could not be made without materially affecting the risk, thus constituting a departure from the original engagement of the parties. If, therefore, the guarantor be held bound without subsequent consent, which does not here appear, it would have to be by virtue of a contract upon the terms of which the minds of the parties never met. *Prima facie,* a guaranty of the kind under consideration is essentially local."

At the time Mr. Larsen left Michigan he owed plaintiffs $196.70, and defendants, in their motion for a directed verdict, appear to have taken the position that the first moneys paid by Mr. Larsen after his removal to Wisconsin should be applied in satisfaction of the Michigan debt, and, therefore, defendants held not liable therefor. If defendants are permitted to follow the business to Wisconsin for credits, they must also follow it there for debts.

We hold that, under the guaranty, defendants are liable for the Michigan indebtedness of Larsen and not for his Wisconsin indebtedness, and have no

right. to any credit growing out of the Wisconsin business. The court was in error in directing a verdict for plaintiffs in the amount stated.

If plaintiffs, within ten days, remit the judgment to $196.70 it will stand affirmed in that sum, otherwise reversed, with a new trial. In either event, defendants will recover costs of this court.

BUTZEL, CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.