FURST et al, Respondents, v. BURY et al, Appellants.

(249 N. W. 732.)

(File No. 7445. Opinion filed July 31, 1933.)

*J. E. Tipton*, of Lake Andes, for Appellants.

*Wicks & Quinn*, of Scotland, for Respondents.

CAMPBELL, J. This appeal presents a single legal question, sought to be raised in the court below by the interposing of a demurrer and a ruling thereon. It appears from the complaint that the following writing was executed between the parties in 1925:

"Credit Sales Agreement

"This agreement made and entered into at Freeport, Illinois, by and between Frank E. Furst and Fred G. Thomas, co-partners, doing business under the name of Furst and Thomas of Freeport, Illinois, and E. M. Hess of Geddes, S. D., hereinafter called the dealer witnesseth:

"That, whereas, the aforesaid dealer wishes to engage in the business of retailing the products handled by Furst and Thomas, buying from them on credit and agrees to pay Furst and Thomas their regular wholesale prices for all products bought from them, in reasonable installments out of the proceeds of his business until account is balanced, therefore,

"Furst and Thomas agree, upon acceptance of this agreement, to sell to the said dealer their products on credit at their regular

wholesale prices in reasonable quantities as ordered by him from time to time, unless prevented by fires, strikes, accidents or other causes beyond their control, but it is expressly understood and agreed that Furst and Thomas shall have the right to limit the amount of credit to be extended to the said dealer and to refuse to fill his orders in whole or in part if in their judgment his payments on account are not satisfactory. If he remits cash with order he shall receive a discount of five percent (5%) from their current wholesale prices if his account is balanced. The dealer, as a matter of good faith and to show what the receipts of his business are from week to week, agrees to send Furst and Thomas each week an itemized record of his business on form provided for that purpose by them.

"Furst and Thomas also agree to give the aforesaid dealer advice and suggestions based on their experience and on the methods of other successful dealers retailing their products in a similar way, but it is expressly agreed that nothing contained in such advice and suggestions shall be binding upon the dealer nor shall be construed as in any way altering or modifying the terms of this agreement.

"Either party shall have the right to terminate this agreement by giving written notice to the other party and upon its termination from any cause by either party the dealer agrees to pay within three months the balance due Furst and Thomas on account; provided that if the dealer fails to make regular remittances or attempts to avoid settlement of his account the balance shall become immediately due and payable at the option of Furst and Thomas. If the said Dealer wishes to sell back his stock of products he may ship them to Furst and Thomas at Freeport, Illinois, transportation charges prepaid within thirty days after the termination of this agreement, and Furst and Thomas agree to pay him for such products when received in good condition, in original, unopened bottles and packages, their regular wholesale price less the cost of checking, handling and putting the products back into stock and if on final accounting any balance is due the Dealer to pay it promptly.

"This agreement is subject to acceptance by Furst and Thomas at their home office in Freeport, Illinois and shall be construed as an Illinois contract. When so accepted it shall immediately be in

force and effect and unless sooner terminated shall expire December 31, 1927.

"Dealer sign here in ink: E. M. Hess.

"The undersigned sureties, having acquainted ourselves with the terms and conditions of the above agreement do now in consideration of Furst and Thomas extending credit to the above named dealer jointly and severally guarantee payment to Furst and Thomas for all products sold by them on credit to him whether such products are for re-sale, for advertising or for other purposes, hereby waiving acceptance and all notice, and we further agree that the written acknowledgment of his account by the said dealer shall bind us and that any extension of time or change in the conditions of payment for goods sold to him on credit shall not release us from liability hereon. We further agree that after three months from the termination of the above agreement by either party and the non-payment of his account by the said dealer this guaranty shall become absolute as to the amount due from him and we shall be primarily liable for the payment of same and upon demand we promise to pay the amount to Furst and Thomas without any proceeding being taken by them against the said dealer.

"Sureties Sign Here in Ink:

|  | Occupation | P. O. Address |
|---|---|---|
| Chas. L. Bury | Physician | Geddes, S. D. |
| C. H. Halley | Farming | Geddes, S. D. |
| J. O. Tronvold | Farming | Geddes, S. D. |

"This agreement is hereby accepted at Freeport, Illinois, this 10th day of June, 1925.

"Furst & Thomas,
"By F. G. Thomas."

It is to be noted that there is nothing in the foregoing agreement specifying where the dealer defendant Hess was to engage in the business of retailing the products which he might purchase from plaintiffs Furst and Thomas, payment for which was guaranteed by the defendants Bury, Halley, and Tronvold. It was pleaded by the answer that, as a matter of fact, at the time of the execution of the writing above set out the dealer Hess was authorized by plaintiffs Furst and Thomas to retail the goods which he might purchase of them in a definite territory in the vicinity of Plankinton, S. D. (being near Geddes, where all the defendants

resided), and not elsewhere, and that thereafter, without the consent or agreement of the guaranteeing defendants, the plaintiffs assigned Hess to a different territory some distance away, with the result that he thenceforth conducted his retailing and maintained his residence at a point away from the other defendants and beyond their observation and supervision, and by paragraph 7 of the answer it was alleged: "That at the time of the signing of the agreement of guaranty marked Exhibit 'A' of plaintiffs' complaint, the said defendant, E. M. Hess and these defendants each and all intended said contract of guaranty to apply only to the territory designated in the original agreement, and it was not contemplated at that time by any of the parties that the said E. M. Hess should be moved or transferred to any other territory than that covered by the agreement then existing."

Plaintiffs having instituted this action to recover, pursuant to the writing above set out, a balance of some $875 claimed to be due them for goods purchased by the defendant Hess, the question sought to be presented in the court below and the sole question argued on this appeal is whether or not the facts pleaded in the answer as hereinbefore set forth, if established by adequate proof, will constitute a defense for the guaranteeing defendants as against any liability on the written contract to the extent that the balance due from the dealer Hess to the plaintiffs represents goods purchased by him after his removal to the new territory.

Plaintiffs-respondents urge that the removal of the dealer Hess to a new territory should not discharge the guaranteeing defendants from subsequent liability under the writing. They cite and rely upon Marshall Field & Co. v. Haish, 85 Ill. App. 164, which so holds and their theory appears to have been adopted by the learned trial judge.

Defendants-appellants, on the other hand, cite and rely upon Bradshaw v. Barber, 125 Minn. 479, 147 N. W. 650, which seems to be contra to the Marshall Field Case, and the case of Furst v. Larsen, 252 Mich. 291, 233 N. W. 320, which, after discussing the Marshall Field Case and the Bradshaw Case, approves and adopts the view of the latter.

We do not believe that a valid distinction, as a matter of law, can be drawn between the situation presented in the instant case and that presented in Furst v. Larsen, supra, and we are of the

opinion that the better reason supports the view of the Minnesota and Michigan cases above cited.

It follows that the order appealed from should be, and it is, reversed.

All the Judges concur.