No. 55,134

THE IOLA STATE BANK, *Appellant,* v. JOE BIGGS, JAN BIGGS, BIGGS FEED & GRAIN, INC., and DOLORES M. BYBEE, *Appellees.*

(662 P.2d 563)

Opinion filed April 29, 1983.

*Charles N. Henson,* of Eidson, Lewis, Porter & Haynes, of Topeka, argued the cause, and *Anne L. Baker,* of the same firm, and *Toland and Thompson,* of Iola, were with him on the brief for the appellant.

*Herbert A. Marshall*, of Marshall, Hawks, Hendrix, Schenk & Nichols, of Topeka, argued the cause, and *Robert J. Perry*, of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

LOCKETT, J.: This is an action brought by the Iola State Bank (Bank) to enforce certain guaranty agreements executed by Dolores M. Bybee and others who are not parties to this appeal. The first two contracts, executed in 1974, guaranteed the obligations of Joe Biggs and Jan Biggs d/b/a Biggs Feed & Grain. A third contract, executed in 1975, guaranteed the obligations of Biggs Feed & Grain, Inc. (Corporation), corporate successor to the individual business.

The facts are undisputed. Parties filed cross-motions for summary judgment; after oral argument the district court found only the third guaranty contract was enforceable against Dolores M. Bybee. The Bank appeals.

On May 21, 1974, the Iola State Bank loaned Joe Biggs and Jan Biggs d/b/a Biggs Feed & Grain, $37,500.00. The loan was secured by a note signed by Joe Biggs and Jan Biggs and a guaranty agreement executed on the same day by Jack L. Bybee and Dolores M. Bybee in the same amount. The bank retained a security interest in all the inventory and accounts receivable of the Biggs Feed & Grain business. A second guaranty agreement in the amount of $50,000.00 was executed by Dolores M. Bybee and Jack L. Bybee June 17, 1974, enabling Joe Biggs and Jan Biggs d/b/a Biggs Feed & Grain to obtain additional credit. There was a figure of $41,196.55 in outstanding obligations to the Bank by the Biggs when the second guaranty agreement was executed.

On April 29, 1975, Articles of Incorporation of Biggs Feed & Grain, Inc. were filed with the Secretary of State of the State of Kansas. The incorporators and initial directors were Joe Biggs, Jan Biggs, and Jack L. Bybee. The Corporation's annual reports filed with the Secretary of State for the years 1975 through 1979, inclusive, showed that the directors continued to be Joe Biggs, Jan Biggs, and Jack L. Bybee. Joe Biggs was the sole stockholder of the Corporation. Jack L. Bybee was the treasurer of the Corporation. The Bybees' sole interest in the Corporation was to assist their daughter, Jan Biggs. At the time of incorporation Joe

Biggs and Jan Biggs were obligated to the Iola State Bank in the amount of $99,802.58.

A third contract of guaranty dated April 29, 1975, was executed by Dolores M. Bybee, Jack L. Bybee, Joe Biggs and Jan Biggs to enable the corporation to obtain credit from the Bank and guarantee payment of such credit to the extent of $150,000.00.

On the 20th day of May, 1975, the Bank consolidated the balances of three different loans to Joe Biggs and Jan Biggs into one corporate obligation. The outstanding balance of $67,000.00 of the Biggs became a corporate obligation under one note. From May 20, 1975, until December 8, 1981, the sole obligor under all notes was the Corporation. Every note after incorporation was executed by Joe Biggs, president of Biggs Feed & Grain, Inc. The Corporation made payments on the balance of the notes and its subsequent ten renewals as corporate notes. August 15, 1980, the Bank consolidated all debts due and owing from the Corporation into one corporate obligation note in the amount of $294,000.00. On December 8, 1981, the Bank sued to recover the outstanding balance due it from the Corporation under the note and to enforce the three guaranty agreements executed by the parties. After the action was commenced, Joe Biggs and Jan Biggs filed bankruptcy and Jack L. Bybee died. The Bank amended its petition and proceeded against Dolores M. Bybee.

Dolores M. Bybee denied any liability under the 1974 guaranties for the notes signed by Joe Biggs and Jan Biggs, claiming the obligations were extinguished when the business incorporated and a new guaranty was executed for the Corporation in the sum of $150,000.00. Mrs. Bybee admitted owing the sum of $150,000.00 under the last guaranty agreement for credit extended by the Bank to the Corporation.

The appellant Bank contends the district court erred in holding that the 1974 guaranty contracts did not guarantee the obligations of the individuals of the corporate successor.

For reasons hereinafter stated, the position taken by the appellant lacks merit.

The law of guaranty is a part of the law of contracts; a guaranty is a type or kind of contract. For a guaranty there must be at least three parties: a guarantor, a creditor (the individual to whom the promise is made), and a debtor. The guaranty is an obligation collateral to another contractual duty to perform. The contract of the guarantor is a separate contract. It is in the nature of a

warranty by the guarantor that the thing guaranteed to be accomplished by the principal shall be done, and is not an engagement jointly with the principal to do the act. See *Trego WaKeeney State Bank v. Maier*, 214 Kan. 169, 519 P.2d 743 (1974).

The first two guaranty agreements were executed during 1974 by Dolores M. Bybee and Jack L. Bybee in favor of the Bank, obligating them to pay the outstanding indebtedness on notes of Joe Biggs and Jan Biggs d/b/a Biggs Feed & Grain. The third and final guaranty agreement was executed in 1975 by Dolores M. Bybee, Jack L. Bybee, Joe Biggs and Jan Biggs for credit extended to the corporation, Biggs Feed & Grain, Inc.

The general rule is, absent a novation or release, the original obligors remain liable when a corporation assumes an existing debt. The rule stated by Fletcher is as follows:

"The liability of partners or members of an association on contracts, debts and obligations of the firm or association may relate to such as arise prior to and exist at the time of the incorporation, or to those which come into being afterwards. In regard to the former, *the rule is that partners or members remain liable as such on all contracts and for all debts made or incurred by them while they were doing business as partners or associates, unless they are released from liability, and this is true notwithstanding there has been assumption of the debts and obligations by the corporation, . . . unless upon such assumption there has been a novation or the partners or associates have been released from liability. . . .* It does not alter the rule of liability that the other party to the contract may have known that the partnership articles provided for incorporation, or the members contemplated future incorporation." 8 Fletcher, Cyclopedia of the Law of Private Corporations § 4019, p. 373 (rev. perm. ed. 1982). Emphasis supplied.

Neither of the Bybees were partners or associates in the feed and grain business with the Biggs.

The authority relied upon by the Bank is distinguishable and not applicable in this case. Each of the Kansas cases cited regarded note renewal; the note was renewed by the original debtor or was merely an extension of time in which to pay the obligation. See *Farmers State Bank v. Cooper*, 227 Kan. 547, 608 P.2d 929 (1980); *Potwin State Bank v. Ward*, 183 Kan. 475, 327 P.2d 1091 (1958); and *Fourth National Bank v. Hill*, 181 Kan. 683, 314 P.2d 312 (1957).

In *Farmers State Bank v. Cooper*, 227 Kan. 547, the court reviewed the general rule relative to note renewals:

"The renewal of a note signifies the substitution in place of one engagement of

a new obligation on the same terms and conditions; that is, the reestablishment of a particular contract for another period of time." Syl. ¶ 1.

"Where a note is given merely in renewal of another and not in payment thereof, the renewal does not extinguish the original debt nor in any way change the debt except by postponing time of payment, and, as a general rule, the holder is entitled to the same rights and remedies as if he was a proceeding on the original note." Syl. ¶ 5.

A guaranty may be either continuing or restricted. The contract is restricted if it is limited to guarantee a single transaction or a numer of specific transactions and is not effective for transactions other than those guaranteed. The contract is continuing if it contemplates a future course of dealing during an indefinite period or it is intended to cover a series of transactions or a succession of credits, or if its purpose is to give to the principal debtor a standing credit to be used by him from time to time. An offer for a continuing guaranty contract is ordinarily effective until revoked by the guarantor or extinguished by some rule of law. 38 Am. Jur. 2d, Guaranty § 23.

Each of the three guaranty agreements were executed using the same standard guaranty agreement form. The form states:

### "LOAN GUARANTY AGREEMENT

"For Value Received and to enable _____ of _____, hereinafter designated as 'Debtor,' we hereby request said Bank to extend to said Debtor such credit as said Bank may deem proper, and we hereby jointly and severally guarantee the full and prompt payment to said Bank at maturity, and at all times thereafter, and also at the time hereinafter provided, of any and all indebtedness, liabilities and obligations of every nature and kind of said Debtor to said Bank, and every balance and part thereof, whether now owing or due, or which may hereafter, from time to time, be owing or due, and howsoever heretofore or hereafter created or arising or evidenced, to the extent of _____ Dollars, and we jointly and severally also agree to pay in addition thereto, all costs, expenses and reasonable attorney's fees at any time paid or incurred in endeavoring to collect said indebtedness, liabilities and obligations, and in and about enforcing this instrument.

"All diligence in collection, and all presentment for payment, demand, protest, notice of protest, and notice of non-payment, dishonor and default, and of the acceptance of this guaranty, and of any and all extensions of credit hereunder, are hereby expressly waived.

"The granting of credit from time to time by said Bank to said Debtor in excess of the amount of this guaranty and without notice to the undersigned, is hereby authorized and shall in no way affect or impair this guaranty.

"Authority and consent are hereby expressly given said Bank from time to time, and without any notice to the undersigned, to give and make such extensions, renewals, indulgences, settlements and compromises as it may deem proper with respect to any of the indebtedness, liabilities and obligations

covered by this guaranty, including the taking or releasing of security and surrendering of documents.

"In case of the death, dissolution, liquidation, failure, insolvency or bankruptcy of said Debtor, all of said indebtedness, liabilities and obligations, to the extent of the amount of this guaranty, shall, at the option of said Bank, become immediately due from, and be forthwith paid by the undersigned to said Bank, the same as though said debts, liabilities and obligations had matured by lapse of time.

"This guaranty shall be construed according to the laws of the State of _____, in which state it shall be performed by the undersigned.

"This guaranty shall be binding upon the undersigned jointly and severally, and upon the heirs, legal representatives and assigns of the undersigned, and each of them, respectively, and shall inure to the benefit of said Bank, its successors, legal representatives and assigns.

"Signed and Sealed by the undersigned at _____, this _____ day of _____, 19___.

"_____ (SEAL)"

The two guaranty agreements executed in 1974 were by Dolores M. Bybee and Jack L. Bybee to enable Joe Biggs and Jan Biggs to obtain credit from the Bank. The agreements were of a continuing character allowing the Biggs to obtain extensions, renewals, and granting of additional credit without notice to the Bybees. The parties agree that the total of the amounts in the two 1974 agreements of $87,500.00 was guaranteed by the Bybees.

On April 29, 1975, the Articles of Incorporation of Biggs Feed & Grain were filed with the Secretary of the State of Kansas. Joe Biggs, Jan Biggs and Jack L. Bybee were the initial incorporators. Neither Jack L. Bybee or Dolores M. Bybee ever held stock in the corporation. The same day as the Articles of Incorporation were filed, the third guaranty agreement was executed by Joe Biggs, Jan Biggs, Jack L. Bybee and Dolores M. Bybee to enable Biggs Feed & Grain, Inc. to obtain credit for the amount of $150,000.00 from the Bank.

The trial court found from the uncontroverted facts: (1) under separate notes Joe Biggs and Jan Biggs had various outstanding balances due the Bank; (2) Joe Biggs' and Jan Biggs' obligations under the notes were consolidated into one corporate note one month after incorporation; (3) a third guaranty was executed by the Bybees and the Biggs on behalf of the debtor corporation; (4) a new named debtor came into existence, *i.e.,* Biggs Feed & Grain, Inc.; (5) a new obligation existed, *i.e.,* $67,000.00 principal with interest on the entire principal; and (6) there was an execution of a new security agreement and financing statement by the corporation for the Bank's perfection of its security inter-

est. The proprietorship's obligations were extinguished or paid by their becoming the new corporate debtor's obligations. Dolores M. Bybee's liability under the proprietorship guarantees ended.

A contract of guaranty is to be construed, as other contracts, according to the intention of the parties as determined by reasonable interpretation of the language used, in light of the attendant circumstances. After the intention of the parties or the scope of the guarantor's undertaking has been determined by general rules of construction, the obligation is strictly construed and may not be extended by construction or implication. *Trego WaKeeney State Bank v. Maier*, 214 Kan. 169, Syl. ¶ 3. See also 38 C.J.S., Guaranty § 38, pp. 1177-1181.

A guarantor may be relieved of an obligation to pay if the debt is extinguished, if there is a valid release or discharge, if a claim against the guarantor is barred by the statute of limitations, or if there is a change in the original contract between the obligor and obligee. *Bomud Co. v. Yockey Oil Co.*, 180 Kan. 109, 113, 299 P.2d 72 (1956); *Failing Co. v. Cardwell Investment Co.*, 190 Kan. 509, 516, 376 P.2d 892 (1962); *First National Bank of Anthony v. King*, 2 Kan. App. 2d 519, 520, 583 P.2d 389 (1978). The first two guaranty contracts listed Joe Biggs and Jan Biggs d/b/a Biggs Feed & Grain as the debtor; the business ceased to exist in that form when the Articles of Incorporation were filed. The same day the Articles of Incorporation were filed, a new guaranty contract was executed by the Biggs and the Bybees. The Biggs' indebtedness to the Bank on the day of incorporation was less than $150,000.00 guaranteed by the third guaranty contract. A note consolidating all prior loans was executed by the corporation approximately one month after incorporation. The primary obligor on all loans from the Bank in June, 1975, was the Corporation. The third guaranty contract stated the guarantors were liable for the indebtedness of the corporation "whether now owing or due, or which may hereafter, from time to time, be owing or due, and howsoever heretofore or hereafter created or arising or evidenced, to the extent of One Hundred Fifty Thousand and no/100 ——- Dollars, . . . ."

Under the law a corporation is a separate and distinct legal entity, *Speer v. Dighton Grain, Inc.*, 229 Kan. 272, 624 P.2d 952 (1981). A corporation and its stockholders are presumed separate

and distinct whether the corporation has many stockholders or just one. The debts of a corporation are not the individual indebtedness of its stockholders. *Amoco Chemicals Corporation v. Bach*, 222 Kan. 589, 567 P.2d 1337 (1977). Joe Biggs was the sole stockholder of the Corporation. Dolores M. Bybee was not a stockholder, director or officer of the corporation, but a party to a guaranty agreement for debts of the Corporation not to exceed $150,000.00.

The trial court was correct in determining from the uncontroverted facts (1) that Mrs. Bybee was neither a partner nor an associate in the feed and grain business when she executed the two 1974 guaranty agreements; (2) a new debtor came into existence when the Corporation succeeded the Biggs' feed and grain business; (3) the third guaranty agreement was executed by the Biggs and the Bybees for obligations assumed by the Corporation and future credit to be advanced by the Bank for the Corporation; (4) the creation of the Corporation and the Bank's consolidation of the Biggs' notes into a new note by the Corporation extinguished the 1974 guaranty agreement for credit extended for the Corporation and could not exceed the sum of $150,000.00.

Appellant next contends that Ms. Bybee's acts and statements caused either equitable estoppel or waiver of her rights.

After incorporation April 29, 1975, the Bank requested that Jack L. Bybee and Dolores M. Bybee file financial statements. Pursuant to the Bank's request, the Bybees filed three financial statements dated December 31, 1975, December 31, 1977, and December 31, 1978.

Each financial statement was an unaudited statement prepared at the request of Jack L. Bybee. Ms. Bybee never saw the submitted statements, nor were the financial statements signed by either of the Bybees. Each statement listed two pre-incorporation guaranties totaling $85,000.00 (actual total $87,500.00) for credit given Joe and Jan Biggs, *now operating as Biggs Feed & Grain, Inc.* The December 31, 1975, financial statement reflected:

"Jack L. and Dolores M. Bybee have signed Loan Guaranty Agreements in support of a line of credit for Joe and Jan Biggs d/b/a Biggs Feed and Grain, now operating as Biggs Feed and Grain, Inc., Waverly, Kansas, in the amount of $85,000.00. At December 31, 1975, $105,619.29 was borrowed on this line of credit."

The financial statements for the years ending December, 1977, and 1978, included the identical paragraph, with the exception of an indebtedness for the year endings of 1977 and 1978 in the amount of $142,810.00. The existence of the 1975 guaranty agreement for corporate debts not to exceed $150,000.00 was not included in any of the three financial statements submitted to the Bank.

In the three separate financial statements submitted, the Bybees, at the Bank's request, stated the pre-incorporation guaranties were outstanding at the time of incorporation. The Bank contends by the declarations contained in the three financial statements Ms. Bybee has waived her right to contest the validity of the three loan guaranty agreements as applied to the defaulting corporation, and is estopped from so contending.

Estoppel bars a litigant from taking a position in court different from that previously asserted. Application of the doctrine of estoppel is appropriate where a guarantor attempts to avoid terms of a guaranty agreement, after the creditor has relied upon the enforceability of the guaranty in continuous dealings. Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightly relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. *Cosgrove v. Young*, 230 Kan. 705, Syl. ¶ 6, 642 P.2d 75 (1981).

The trial court determined Ms. Bybee performed no act upon which the Bank could rely and thus assert equitable estoppel. Ms. Bybee had not read or signed the unaudited financial statements submitted at the Bank's request; thus, there was no voluntary act upon which the Bank could claim equitable estoppel.

The Bank claimed Ms. Bybee has voluntarily and intentionally renounced or given up a known right, or has caused or committed a positive act or inaction which is inconsistent with a contract right, and that her actions have precluded the assertion of a contractual right in a court of law. Waiver in contract law implies that a party has voluntarily and intentionally renounced or given

up a known right, or has caused or done some positive act or positive inaction which is inconsistent with the contractual right. *Proctor Trust Co. v. Neihart,* 130 Kan. 698, 705, 288 Pac. 574 (1930), and cases cited therein. Once it has been established that a contractual right has been waived, a party possessing the contractual right is precluded from asserting it in a court of law. *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.,* 221 Kan. 523, 526-27, 561 P.2d 792 (1977). The Bank claimed additional credit was extended to the corporation based on the financial statements it received from the Bybees, and Ms. Bybee's failure to request release of the 1974 guaranty agreements when the corporation was formed constituted a waiver of her right to contest the enforceability of all the guaranty agreements. Ms. Bybee's failure to act did not constitute estoppel or a waiver of her rights under the facts of this case.

The trial court was correct in finding there was no estoppel or that Dolores M. Bybee had not waived any contract right by her actions or inactions.

Appellant's final claim is for attorney fees to compensate the creditor as provided by the guaranty contract.

Each guaranty agreement contained the following:

"[W]e jointly and severally also agree to pay in addition thereto, all costs, expenses and reasonable attorney's fees at any time paid or incurred in endeavoring to collect said indebtedness, liabilities and obligations, and in and about enforcing this instrument."

The trial court held that attorney's fees provisions contained in the guaranty agreements were unenforceable under the Kansas law. Generally, attorney's fees are not allowable as damages in the absence of a statute. *Lines v. City of Topeka,* 223 Kan. 772, Syl. ¶ 7, 577 P.2d 42 (1978).

K.S.A. 58-2312 provides:

"Hereafter it shall be unlawful for any person or persons, company, corporation or bank, to contract for the payment of attorney's fees in any note, bill of exchange, bond or mortgage; and any such contract or stipulation for the payment of attorney's fees shall be null and void; and that hereafter no court in this state shall render any judgment, order or decree by which any attorney's fees shall be allowed or charged to the maker of any promissory note, bill or exchange, bond, mortgage, or other evidence of indebtedness by way of fees, expenses, costs or otherwise: *Provided,* That in all existing mortgages wherein no amount is stipulated as attorney's fees, not more than eight percent on sums of two hundred and fifty dollars or under, and not more than five percent on all sums over two hundred and fifty dollars, shall be allowed by any court as attorney's fees: *And*

*provided further,* That this act shall not apply to existing mortgages wherein any sum has been stipulated as attorney's fees."

Our court has relied upon the statute when striking attorney's fees in notes: *Young v. Nave,* 135 Kan. 23, 10 P.2d 23 (1932); *Marksheffel-Sill Motors v. Popejoy,* 135 Kan. 624, 11 P.2d 693 (1932); *Leach v. Urschel,* 112 Kan. 629, 212 Pac. 111 (1923), and mortgages: *Hall v. Goldsworthy,* 136 Kan. 247, 14 P.2d 659 (1932); *Wingrove v. Peoples Nat'l Bank,* 127 Kan. 722, 275 Pac. 150 (1929).

The Bank admits the evidence of indebtedness between the corporation and the Bank, the final note, falls within the prohibitions of attorney's fees of K.S.A. 58-2312.

There are no Kansas decisions determining if K.S.A. 58-2312 bars enforcement of an attorney's fee provision in contracts of guaranty of a note.

In *Singer Co. v. Armstrong,* 7 Kan. App. 314, 54 Pac. 571 (1898), the court addressed attorney's fees payment under a contract the parties delineated as an employee's bond. Armstrong had guarantied that if DeBray, a Singer employee, should fail to account for all proceeds, merchandise and stock sold on behalf of Singer, then Armstrong would make good such default to the extent of $500.00. The contract in the suit was:

"'KNOW ALL MEN BY THESE PRESENTS, That we, E. R. DeBray, of Concordia, Cloud county, Kansas, and C. F. Armstrong, of Clyde, Kansas, obligors, are held and firmly bound unto the Singer Manufacturing Company, a corporation duly incorporated and organized under the laws of the state of New Jersey, doing business in the state of Kansas, and whose corporate existence and capacity to sue are hereby distinctly admitted, in the sum of $500.00, and ten per cent attorney's fees, for the payment of which well and truly to be made to the said Singer Manufacturing Company, their successors, representatives, or assigns, without relief from appraisement, valuation, or stay laws, we bind ourselves, our heirs, executors, and administrators, jointly and severally, firmly, by these presents. Sealed with our seals. Dated the 17th of October, 1892.

"'The condition of the above obligation — *which is expressly intended as a continuing guaranty* — is such, that whereas, the above bounden E. R. DeBray has entered the employ of the said "The Singer Manufacturing Company," for the transaction of such business as they may entrust to him: now, therefore, if the said E. R. DeBray shall well and faithfully perform his duties as such employee, and account for, pay over and deliver to the said company all moneys, credits, notes, leases, accounts, books, property and effects of any and every kind and nature whatsoever belonging to them, that may be entrusted to him, or may come into his possession or under his control by virtue of said employment or otherwise, and whether under or in the absence of any present or future contract,

agreement, or understanding, verbal or written, or any change whatever therein, either with or without notice to either of said obligors other than the said employee, and repay to the said company all outlay and expense which it may incur in ascertaining the nature and extent of a violation of any of the conditions of this bond, then this obligation to be void; but otherwise to remain in full force and effect; and the said obligors hereby waive all right of homestead and other exemptions under the laws of said state, as against any judgment which may be obtained upon this obligation.'" 7 Kan. App. at 319-20. Emphasis supplied.

The court held Armstrong had no liability under the parties' contract. DeBray's employment contract with Singer had changed several times since Armstrong's execution of the above agreement. The court held these subsequent contracts of employment and the transfer of DeBray from the initial Concordia area to Missouri and then back into Kansas relieved Armstrong of his liability under the contract.

In *Singer Co. v. Armstrong*, 7 Kan. App. 314, the parties expressed their relationship as one of a continuing guaranty. Thus, Singer Co. was denied its right to recover attorney's fees incurred in collection of the debt. The Court of Appeals held G.S. 1889, ch. 68, ¶ 3896 expressly prohibits a contract for payment of attorney's fees in any note, bill, bond or mortgage and that such contract shall be null and void, and that no court after the passage of the act should render any judgment or decree by which any attorney's fees should be allowed or charged to the maker of any promissory note, bill of exchange, bond, mortgage or other evidence of indebtedness by way of fees, expenses, costs or otherwise, because the law forbids their allowance in any manner. 7 Kan. App. at 330-31.

*Leach v. Urschel*, 112 Kan. 629, arose out of the plaintiff, a holder in due course, suing on a note with an attorney's fees provision. The defendant asserted fraud, non-negotiability because of the open-ended interest provision and that the attorney's fees provision rendered the note void. The court held the note negotiable even though the interest provision stated that the note would bear eight percent interest until paid with no definite maturity date on the note. The court, however, held the attorney's fees provision void, but that particular provision's voidness did not affect the negotiability of the note.

*Wingrove v. Peoples Nat'l Bank*, 127 Kan. 722, arose from the plaintiff suing the bank for the bank's collection of attorney's fees in its foreclosure suit against plaintiff. The jury verdict for the

defendant was based upon the fact the fees were agreed upon by plaintiff in consideration for settlement of defendant's foreclosure suit and forbearance by the defendant from imposing a ten percent interest penalty on the outstanding balance due the defendant by the plaintiff. Thus, the fees did not arise out of the collection of the note but in consideration and settlement of the parties' dispute and were allowed.

In *Marksheffel-Sill Motors v. Popejoy*, 135 Kan. 624, the plaintiff sued on a note due plaintiff for a car sold to the defendant. The defendant countered for breach of warranty, claiming that the interest on the note was usurious and the attorney's fees provision void. The supreme court reversed the judgment for the plaintiff and remanded for a new trial because from the jury verdict form it was impossible for the court to determine if the jury awarded damages to the defendant and just simply set off that damage award against the balance due the plaintiff by defendant. The court did specifically hold that R. S. 1923 67-312 voids the provisions for attorney's fees.

*Young v. Nave*, 135 Kan. 23, concerned several notes and foreclosure of an Indiana mortgage. Indiana law allowed the payment of attorney's fees in the notes. The Kansas Supreme Court held that such contractual provisions were in violation of the public policy of the State of Kansas, and when the parties sought to enforce their rights under the Indiana notes in the State of Kansas the statute prohibiting attorney's fees controlled. Thus, it denied the plaintiff attorney's fees as contracted for in Indiana. The court's rationale is stated in 135 Kan. at 25:

"The attorney-fee provision affects certainty of the amount which a debtor who gives a note shall be required to pay, mulcts debtors for default on a sum not necessarily compensatory, and is capable of use by Shylock creditors to fleece necessitous debtors of small means."

*Hall v. Goldsworthy*, 136 Kan. 247, arose out of plaintiff suing on a trust deed. The deed provided for payment of attorney's fees incurred by the trustee in its collection if default occurred. The supreme court held the trust deed was a form of a mortgage. Therefore, it was held the attorney's fees provision violated the law and the court denied the prayer for fees incurred.

From the above cases, it is clear that a guaranty agreement is distinct evidence of indebtedness between the guarantor, Dolores M. Bybee, and the Bank.

A suretyship relation is closely akin if not identical at times to that of a guaranty agreement:

"Suretyship is a contractual relation resulting from an agreement whereby one person, the surety, engages to be answerable for the debt, default, or miscarriage of another, the principal. . . . In the Restatement of Security suretyship is defined as the relation which exists where one person has undertaken an obligation and another person is also under an obligation or other duty to the obligee, who is entitled to but one performance, and as between the two who are bound, one rather than the other should perform.

"The surety's obligation is said to be not an original and direct one for the performance of his own act, but rather accessory or collateral to the obligation contracted by the principal, and except perhaps where the original contract is invalid from a disability to contract, it is of the essence of the surety's contract that there be a valid obligation of the principal. But while the contract of a surety is, in a sense, accessory or collateral to a valid principal obligation contracted by another person either contemporaneously or previously, his obligation to the creditor or promisee of the principal is said to be direct, primary, and absolute; in other words, he is directly and equally bound with his principal." 74 Am. Jur. 2d, Suretyship § 1, p. 12.

The above suretyship definition is in substance the same as the guarantor's obligation set out in *Bomud Co. v. Yockey Oil Co.*, 180 Kan. 109. It is distinct from an indemnity agreement. An indemnitor agrees to make whole the indemnitee who in turn had to pay the obligee. See *Kennedy v. City of Sawyer*, 228 Kan. 439, 454-55, 618 P.2d 788 (1980). The *Chetopa State Bancshares, Inc. v. Fox*, 6 Kan. App. 2d 326, 628 P.2d 249, *rev. denied* 229 Kan. 669 (1981), case relied upon by the Bank, is clearly inapplicable herein. It involved a hold/harmless indemnification clause and not a guaranty agreement. In the instant case, the guarantor or surety agrees to perform upon the breach of the principal. *Signer Co. v. Armstrong*, 7 Kan. App. 314; *Bomud Co. v. Yockey Oil Co.*, 180 Kan. 109. K.S.A. 58-2312 prohibits attorney's fees in any suit upon a bond and other evidence of indebtedness.

The Bank attempts to establish the guaranty agreement involved herein is neither a note, a bill of exchange, nor in any manner within the prohibitions of K.S.A. 58-2312. The guarantor, Ms. Bybee, unconditionally promised to pay the Bank $150,000.00 upon default of the principal, Biggs Feed & Grain, Inc. It is signed by Ms. Bybee, the guarantor, and it unconditionally promises to fully and promptly pay to the Bank at maturity and all times thereafter any and all indebtedness, lia-

bilities, and obligations of every nature and kind of the debtor, *i.e.*, the Corporation, to the extent of $150,000.00.

The guaranty agreement in the instant case is analogous if not identical to the suretyship relation of *Singer Co. v. Armstrong,* 7 Kan. App. 314. The clear language of the evidence of indebtedness specifically states that guarantor is as liable as the principal to the Bank for all monies due the Bank not to exceed $150,000.00. Thus, the instant guaranty agreement between the parties falls within K.S.A. 58-2312, and the policy and rationale of *Singer Co. v. Armstrong,* 7 Kan. App. 314, and cases decided thereafter. The attorney's fees provisions contracted for are in violation of K.S.A. 58-2312 and are therefore void.

The judgment of the trial court is affirmed.