**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 2, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

HEAVY PETROLEUM PARTNERS,
LLC; CHEROKEE WELLS, LLC,

> Plaintiffs/Counter -
> Defendants - Appellees,

v.

PAUL ATKINS, an individual; JJR OF
KANSAS LIMITED,

> Defendants/Counterclaimants
> - Appellants.

No. 13-3205
(D.C. No. 6:09-CV-01077-EFM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge**, McKAY,** and **PHILLIPS,** Circuit Judges.

In this appeal, Defendants JJR of Kansas Limited and its owner Paul Atkins

challenge the district court's decision to quiet title in favor of Plaintiffs Heavy

Petroleum Partners ("HPP") and Cherokee Wells in a dispute relating to an oil

and gas lease.

---

[*] On April 1, 2014, this court ordered this matter submitted for disposition
on the briefs pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This
order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The parties' dispute primarily originates from a farmout agreement that Plaintiff HPP and Defendant JJR entered into on May 19, 2006.  The subject of the farmout agreement was the Zachariah Lease, which covers approximately 240 acres in Jefferson County, Kansas.  JJR had previously acquired a lessee's interest in the Zachariah Lease and, through the farmout agreement, offered HPP the opportunity to be assigned 75% of JJR's working interest in the lease.  The Zachariah Lease is underlain by a mineral formation known as the McLouth Sandstone, which contained a very dense, viscous crude oil.  The parties believed the extraction of that oil could be enhanced by using steam injection, whereby the heating of the oil could reduce the oil's viscosity and the resulting liquid water could push the oil toward producing wells.  Thus, under the farmout agreement, JJR and HPP agreed that  "[o]n or before August 1, 2006," HPP would form a "Test Pod" of wells and

> at its sole risk, cost and expense commence actual operations for the drilling of new wells and the reworking of existing wells to a depth of approximately 1,500 feet to inject steam into the McClouth [sic] Sandstone for the purpose of producing oil in commercial quantities.

(Appellants' App. at 175.)

JJR and HPP agreed that HPP's failure to commence such operations would simply "result in the termination of [the farmout agreement] without penalty." (*Id.*)  However, the farmout agreement also stated:

-2-

when and if Farmoutee [HPP] has timely and properly prosecuted the prescribed operations on the said Test Pod and has completed same as a facility capable of producing oil in commercial quantities, and if Farmoutee has otherwise complied with all of the terms and conditions contained herein, then Farmoutor [JJR] will assign to Farmoutee, subject to the reservations and conditions contained herein, a 75% Working Interest and corresponding 62.625% Net Revenue Interest in and to the [Zachariah] Lease covering the Farmout Area as to all depths and all substances.

(*Id.*)

The farmout agreement also gave HPP the "right to drill and develop additional Pods on the Farmout Area by not allowing more than 180 days to elapse between the completion of one Pod and the commencement of operations on the next Pod." (*Id.* at 176.) The farmout further provided that "at such time as Farmoutee [HPP] ceases to drill and develop Pods . . . all lands not located within the 2.5 acres assigned to producing wells within the Pods shall be reassigned to Farmoutor [JJR]." (*Id.*)

On May 30, 2006, shortly after the farmout agreement was executed, HPP "filed an application [with the Kansas Corporation Commission] to permit an injection well" within the Test Pod. (*Id.* at 1064, 1066.) Shortly thereafter, between the months of June and August 2006, HPP commenced work on the Test Pod by drilling new wells and reworking existing wells. By August 11, 2006, the Test Pod was completed as a facility capable of producing oil in commercial quantities by conventional means. However, steam injection did not commence until sometime after October 6, 2006, the date on which the KCC approved steam

injection on the Test Pod.  Roughly one month after steam injection commenced on the Test Pod, HPP began operations on a second pod of wells on the Zachariah Lease in early November 2006.[1]  By June 2007, steam injection commenced on the second pod.

In an instrument dated July 26, 2006, JJR assigned 75% of its working interest in the Zachariah Lease to HPP.  The assignment was given an effective date of May 19, 2006—the same date as the execution of the farmout.  JJR delivered the assignment to HPP on August 23, 2006, on which date the instrument was recorded in the official records of Jefferson County, Kansas.  Notably, at the time that JJR delivered the assignment to HPP, steam injection had not yet commenced on the Test Pod and, therefore, the Test Pod was only capable of producing oil in commercial quantities by conventional methods at that time.

According to the farmout agreement, HPP was obligated to commence operations on a third pod of wells within 180 days.  However, before the date by which HPP was obligated to begin such operations, HPP and JJR entered into an agreement, dated November 13, 2007, which amended the requirement to commence operations on additional pods by placing an "indefinite moratorium" on the pod development obligations within the farmout agreement.  (*Id.* at 220.)

---

[1] It was around this time that Plaintiff Cherokee Wells was assigned rights and interests as the operator of the Lease.

The amendment further indicated the moratorium would last until "either party . . . proposed [further pod development] under the terms and provisions of the [] Farmout Agreement as amended." (*Id.*) Neither JJR nor HPP ever proposed operations for the development of a third pod of wells under this amendment.

In a letter dated January 20, 2009, which was sent to HPP via overnight mail, Defendant Paul Atkins expressed his view "that the steam pod project has been a failure" and accordingly "request[ed] the reassignment of the Zachariah lease to JJR of Kansas with in[sic] the next 30 days." (*Id.* at 308.)

On January 26, 2009, Mr. Atkins, acting on behalf of JJR, filed an affidavit of non-production regarding the Zachariah Lease in the records of Jefferson County. In the affidavit, Mr. Atkins stated he knew "of own personal knowledge" that there was, at the time of filing, "no production of oil or gas in commercial quantities . . . and [that] secondary recovery attempts have failed." (*Id.* at 225.) The affidavit went further, stating the "Assignment and farmout agreement authorizing said assignment has expired by its own terms." (*Id.*) Mr. Atkins then filed a change of operator form with the KCC in an attempt to have JJR designated as operator of the lease.

These facts led Plaintiffs to initiate this lawsuit in March 2009. Plaintiffs ultimately asserted seven claims, including claims for breach of contract and to quiet title. Defendants counterclaimed for conversion and also for quiet title. In June 2010, the district court granted Plaintiffs' motion for summary judgment on

a number of their claims, including their quiet title claim. In December 2010, the district court held a jury trial on the remaining issues. The jury found in Plaintiffs' favor and made an award of damages.

Defendants then brought their first appeal before this court. We affirmed the district court in part, but vacated the district court's summary judgment decision to quiet title in favor of Plaintiffs. We also vacated the jury verdict, since it relied in part on the district court's grant of quiet title. In our opinion, we held the assignment to HPP needed to be read in conjunction with the farmout agreement. We noted that "[u]nder . . . the farmout, Defendants were not entitled to reassignment of a 75% working interest in the lease unless (1) Plaintiffs breached the farmout, (2) Defendants gave Plaintiffs notice of the breach by certified mail, and (3) Plaintiffs failed to cure the breach within thirty days." *Heavy Petroleum Partners, LLC v. Atkins*, 457 F. App'x 735, 747 (10th Cir. 2012). We noted further that the question of whether a breach occurred was "so tied up in the facts of the case that we [we]re loathe to address them as a matter of law." *Id.* Thus, determining the "district court [wa]s better equipped to determine whether fact issues remain," we remanded the case to the district court with instructions to determine "whether summary judgment is appropriate when the assignment is read in conjunction with the farmout." *Id.*

In remanding the case, we opined that "the district court may need to consider such questions as (1) whether assignment of the lease was conditioned

on the test pod producing commercial quantities using steam injection, or simply conventional methods, (2) whether Defendants waived any conditions in the farmout agreement, (3) whether Plaintiffs failed to 'commence operations,' and, if so, whether the lease terminated automatically, (4) whether Defendants provided Plaintiffs proper notice regarding any actual breaches, (5) whether any fact issues remain, and (6) whether, in light of paragraph 9 of the farmout, Plaintiffs are entitiled to any interest in the lease beyond the first two pods." *Id.* However, we "express[ed] no view on how these questions are to be resolved and whether the quiet title remedy is appropriate." *Id.*

On remand, Plaintiffs again sought summary judgment on the quiet title issue, which the district court denied. In May 2013, the district court conducted a bench trial. After taking the matter under advisement, the district court issued a memorandum and order entering judgment in favor of Plaintiffs and quieting title in their favor. *Heavy Petroleum Partners, LLC v. Atkins*, No. 09-1077-EFM, 2013 WL 3821275 (D. Kan. July 23, 2013) (unpublished). In its memorandum and order, the district court made findings of fact consistent with those we have recited above and applied the substantive law of Kansas, the forum state, to resolve the questions suggested in our opinion remanding the case. *See id.* at *5.

Addressing the first question suggested in our opinion, the district court concluded, based on the plain language of the farmout, that the assignment was not conditioned on the production of commercial quantities of oil by steam

injection alone, rather than by additional or alternative methods. In the same discussion, the district court addressed our third suggested question regarding whether Plaintiffs failed to commence operations as prescribed in the farmout. The district court concluded the farmout simply states "that HPP shall commence operations to drill and rework existing wells to inject steam for the purpose of producing oil in commercial quantities." *Id.* at *6. Based on the evidence introduced at trial the district court found such operations were commenced in a timely fashion and were completed such that "all wells in the Test Pod were capable of producing oil in paying or commercial quantities at the time Atkins delivered the Assignment on August 23, 2006." *Id.* at *5. Thus, the district court concluded that HPP "satisfied the requirements to earn the Assignment when Atkins delivered it on August 23, 2006." *Id.* at *6.

The district court then addressed our second suggested question regarding whether Defendants waived any conditions of the farmout agreement. The district court concluded that "even if the Farmout required HPP to establish production of commercial quantities of oil by steam injection for HPP to earn the assignment (as JJR contends)," the evidence at trial showed that "JJR waived this contractual provision." *Id.* By assigning HPP its interest in the lease when he "was fully aware that the Test Pod was not capable of production in commercial quantities due to steam injection alone," *id.,* Mr. Atkins and, consequently, his company, "'voluntarily and intentionally renounced'" any alleged contractual right

-8-

conditioning the assignment on the production of commercial quantities of oil by steam injection because this assignment was "'inconsistent with th[at alleged] contractual right,'" *id.* (quoting *Iola State Bank v. Biggs*, 662 P.2d 563, 571 (Kan. 1983)). Therefore, the district court concluded that, even if the farmout agreement might have required production in commercial quantities by steam injection alone for the assignment to be valid, Defendants, having waived that alleged contractual right, were "'precluded from asserting it in a court of law.'" *Id.* (quoting *Iola State Bank*, 662 P.2d at 572).

The district court then addressed our fourth suggested question regarding whether Defendants provided Plaintiffs with proper notice of a breach and a proper period in which to cure any alleged breach, concluding "Defendants did not present any actual breaches by Plaintiffs during trial, and in any event, Defendants failed to provide Plaintiffs with the proper notice as required by . . . the Farmout of any alleged breach." *Id.* at *6 n.11.

The district court also addressed our sixth suggested question regarding whether Plaintiffs are entitled to any interest in the lease beyond the first two pods. One provision of the farmout agreement provided that, if HPP ceased complying with its contractual obligations to drill and develop pods under the farmout agreement, all lands not located within a developed pod would be reassigned to JJR. However, the district court concluded that the 2007 amendment to the farmout agreement, with its indefinite moratorium, "suspended

HPP's obligation . . . to drill and develop additional pods of wells after Pod 2." *Id.* The district court therefore concluded the amended farmout "does not operate to reassign interest in the undeveloped portions of the lease to JJR." *Id.*

Based on all of these conclusions, the district court resolved our fifth suggested question on remand by holding that Plaintiffs were entitled to a judgment quieting title in their favor. Accordingly, the district court granted quiet title to Plaintiffs. The district court also reinstated the jury verdict, which we had vacated because it relied on the district court's earlier summary judgment grant of quiet title.

On remand, the district court also apparently allowed briefing on a new issue raised by Mr. Atkins. Mr. Atkins alleged that "when HPP executed upon its judgment, HPP allegedly improperly sold Atkins' personal interest in a 6.5% overriding royalty interest in an oil and gas lease ("the Noll Lease")." *Id.* at * 7. Though the district court reserved judgment on this issue in its memorandum and order, it subsequently concluded in its denial of Defendants' Rule 59(e) motion that Defendants had abandoned this issue by asserting in their notice of appeal to this court that "'[t]he part of the order addressing defendant Atkins' personal ownership interest [in the Noll Lease] . . . is not a remaining issue regarding the rights of the parties.'" *Heavy Petroleum Partners, LLC v. Atkins*, No. 09-1077-EFM, 2013 WL 5876423 at *1 n.5 (D. Kan. Oct. 31, 2013) (unpublished) (quoting Appellants' Notice of Appeal).

On appeal, Defendants raise several challenges to the district court's memorandum and order quieting title in Plaintiffs' favor. Defendants also seek to appeal the district court's denial of their Rule 59(e) motion, particularly as it relates to the Noll Lease issue.

**II.**

As an initial matter, we must address the scope of our appellate jurisdiction over the arguments raised in this appeal. After filing their notice of appeal from the district court's memorandum and order, Defendants filed a Rule 59(e) motion to alter and amend the judgment. When the district court denied this motion, the notice of appeal became effective as to the appealed-from memorandum and order. *See* Fed. R. App. P. 4(a)(4)(B)(i). However, because Defendants never filed a new notice of appeal or an amended notice of appeal relating to the denial of their Rule 59(e) motion, we lack jurisdiction to consider any challenges to this decision now. *See* Fed. R. App. P. 4(a)(4)(B)(ii). We additionally lack jurisdiction over Defendants' arguments relating to the Noll Lease issue because this issue was not identified as an issue subject to appeal in Defendants' notice of appeal. *See Phillips v. James*, 422 F.3d 1075, 1081 (10th Cir. 2005) (noting we only have jurisdiction to address issues raised in the notice of appeal). Indeed, far from identifying this as an issue for appeal, Defendants affirmatively disavowed it, explicitly stating in their notice of appeal that this issue was "not a remaining issue regarding the rights of the parties." (Appellants' App. at 1009).

Accordingly, we have jurisdiction only as to Defendants' arguments relating to the district court's memorandum and order, and specifically its quiet title decision.

"In an appeal from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." *Keys Youth Servs., Inc. v. City of Olathe, Kan.*, 248 F.3d 1267, 1274 (10th Cir. 2001). After carefully reviewing the record, we have seen nothing clearly erroneous in the district court's factual findings. And applying these findings to the legal issues before us, Defendants' arguments fail to persuade us that any of the district court's legal conclusions were incorrect. We are persuaded the district court did not err in quieting title in Plaintiff's favor.

For the foregoing reasons, we **AFFIRM** the district court's memorandum and order quieting title in favor of Plaintiffs and restoring the jury verdict. We **DISMISS** for lack of jurisdiction Defendant's arguments relating to the Rule 59(e) motion and the Noll Lease issue.

Entered for the Court


Monroe G. McKay
Circuit Judge